STATE of Iowa, Appellee,

v.

Robert M. HENRY, Appellant.

No. 90–1127.

Court of Appeals of Iowa.

Jan. 29, 1992.

Linda Del Gallo, State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Amy M. Anderson, Asst. Atty. Gen., and Richard Crowl, County Atty., for appellee.

Heard by OXBERGER, C.J., and SCHLEGEL and HAYDEN, JJ.

SCHLEGEL, Judge.

In late August 1988 Robert Henry and others allegedly robbed the home of eighty-seven-year-old Francis Leonard. During the robbery Henry allegedly beat Leonard severely on the head. Leonard lived in a comatose state for four months and died on December 30, 1988, as a result of these injuries.

About two weeks after this incident Henry tried to rob a tire repair establishment. During this crime Henry shot the establishment's night watchman, Jack Kitchens, with a shotgun. Henry then dropped the shotgun when Kitchens returned fire. The shotgun was seized by police, and it proved to be one of the guns stolen from the Leonard residence.

Henry was arrested at the scene of the Kitchens shooting. In September 1988 he was charged with first-degree robbery and attempt to commit murder in connection with the Francis Leonard case; he was also charged with a separate count of attempt to commit murder in connection with the Kitchens case.

On December 13, 1988, Henry entered guilty pleas to the following charges: first-degree robbery and an amended charge of willful injury in connection with the Francis Leonard case, and an amended charge of willful injury in connection with the Kitchens case. On December 27, 1988, Henry was sentenced on these charges.

Three days after sentencing on these charges Francis Leonard died. Subsequently, the State filed charges of first-degree murder and first-degree burglary against Henry in connection with the Leonard case. After a jury trial, Henry was convicted of both charges. He has appealed the resulting convictions.

## I.

Henry first contends he was unconstitutionally subjected to double jeopardy by the first-degree murder and first-degree burglary convictions, after he had already been convicted for first-degree robbery and willful injury arising from the same facts. Because this issue involves a constitutional right, our scope of review is de novo. *State v. Davis,* 446 N.W.2d 785, 787 (Iowa 1989).

Francis Leonard was transported to the hospital shortly after he was discovered on the floor of his home. At that time he was unconscious. After the emergency room, he was placed in intensive care for one and one-half months. He was subsequently moved to the general floor of the hospital for a few weeks and then to the skilled care area. Because he remained in a coma, he was given intravenous fluids and tubal feedings. Leonard was not brain dead during this time; he had brain waves.

His neurosurgeon, Dr. Rassekh, testified that once a person is in the hospital in a coma, it is highly likely he will develop pneumonia and die. He further stated that Leonard was not in a deep coma since the victim would respond to painful stimuli on his left side. Dr. Rassekh wrote a letter to the county attorney's office on October 27, 1988, stating Leonard's prognosis was poor. The county attorney testified she did not know Leonard was in imminent risk of dying and the fact that Leonard could die never entered into the plea bargain.

Henry states that at the time he entered his guilty plea to the robbery and willful injury charges it was his understanding that no other charges would be filed in connection with these incidents. He claims he had been advised Leonard was not expected to live and this knowledge affected his guilty plea decision. He argues the filing of the first-degree murder charge violated his constitutional right not to be twice put in jeopardy.

The purpose behind the prohibition against successive prosecutions, whether an acquittal or a conviction,

is that the State with all its resources and power should not be allowed to make

repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199, 204 (1957). In *Brown v. Ohio,* 432 U.S. 161, 166, 97 S.Ct. 2221, 2226, 53 L.Ed.2d 187, 194–95 (1977), the Supreme Court established the general rule that the double jeopardy clause prohibits a state from trying a defendant for a greater offense after it has convicted the defendant of a lesser-included offense.

However, the *Brown* Court established an exception to this general rule. The exception permits the State to try a defendant for a greater offense, after he or she has been convicted of a lesser offense, when all the events necessary for the greater crime have not taken place at the time of the earlier prosecution. *Brown,* 432 U.S. at 169 n. 7, 97 S.Ct. at 2227 n. 7, 53 L.Ed.2d at 196 n. 7. This exception is based on another Supreme Court case, *Diaz v. United States,* 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912). In *Diaz,* the victim died after the defendant was convicted and sentenced on the charge of assault and battery. The Court held the defendant should face prosecution for murder:

> The death of the injured person was the principal element of the homicide, but was not part of the assault and battery. At the time of the trial for the latter the death had not ensued, and not until it did ensue was the homicide committed. Then, and not before, was it possible to put the accused in jeopardy for that offense.

*Id.* at 449, 32 S.Ct. at 251, 56 L.Ed. at 503.

The Supreme Court has recently restated this exception in *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 2090 n. 7, 109 L.Ed.2d 548, 561 n. 7 (1990) (citations omitted):

> We recognized in *Brown v. Ohio* that when application of our traditional double jeopardy analysis would bar a subsequent prosecution, "[a]n exception may exist where the State is unable to proceed on the more serious charge at the outset because the additional facts necessary to sustain that charge have not occurred or have not been discovered despite the exercise of due diligence."

The *Grady* Court affirmed the lower court's finding that Corbin was twice put in double jeopardy *for the same offense* because the victim died *before* the defendant pleaded guilty to the traffic offense. "Because [the assistant district attorney] was informed of [the victim's] death on the night of the accident, such an exception is inapplicable here." *Id.*

In this case, the victim did not die until *after* the defendant pleaded guilty and was sentenced. When Leonard died, a new and distinct crime was created. *See Commonwealth v. Maroney,* 417 Pa. 368, 371, 207 A.2d 814, 816 (1965) (defendant's prior conviction was not bar to his subsequent prosecution for murder; "[w]hen death occurred, a new and distinct crime was consummated for which he was not before guilty or prosecuted"); *see also State v. Wilson,* 85 Ariz. 213, 335 P.2d 613 (1959); *People v. Harrison,* 395 Ill. 463, 70 N.E.2d 596 (1946), *cert. denied,* 334 U.S. 812, 68 S.Ct. 1013, 92 L.Ed. 1744 (1948).

The State could not have proceeded with a murder charge at the outset because there had not been a homicide. Henry argues that at the time of his guilty plea and sentencing "Leonard's imminent death was known or should have been known to the State." Leonard was alive and had active brain waves at the time of Henry's sentencing. The State could not and should not have to foresee the victim's future. Leonard's death was attributable to the beating which the defendant inflicted, and because his death was a new fact, the trial for murder did not place the defendant twice in jeopardy. The trial court properly overruled the defendant's motion to dismiss.

## II.

■ Henry next argues the district court erred by admitting evidence concerning the

Jack Kitchens shooting. He claims this evidence was evidence of another crime or bad act and was inadmissible under Iowa Rule of Evidence 404(b). Iowa Rule of Evidence 404(b) provides that not all prior crimes or bad acts must be excluded from trial:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he [or she] acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The trial court ruled this challenged evidence was admissible because it helped to prove identity. We reverse the trial court's determination only upon a showing of abuse of discretion. *State v. Plaster*, 424 N.W.2d 226, 229 (Iowa 1988); *State v. Butler*, 415 N.W.2d 634, 636 (Iowa 1987).

We determine the trial court was correct when it ruled this shooting incident was admissible to prove identity. Two important pieces of evidence discovered as part of the incident linked Henry to the assault of Leonard. First, a gun that was found at the scene of the shooting incident was positively identified as Leonard's shotgun. Second, Henry's shoes were taken from him at the hospital where his gunshot wounds were being treated. His shoeprints matched the shoeprints that were lifted from Leonard's home. We believe the shooting incident was relevant to prove identity.

In addition, the evidence was for a purpose other than the establishment of propensity. The result of this evidence was not that the defendant was a bad person because he was involved in this shooting incident. Rather the upshot of this evidence was that Leonard's shotgun was likely to be in Henry's possession when the shotgun was found two weeks after the assault. *See State v. Knox*, 464 N.W.2d 445, 449 (Iowa 1990) (admission of evidence that defendant had previously possessed alleged murder weapon was not abuse of discretion despite contention that probative value was outweighed by prejudice).

### III.

We have considered all of Henry's claims, and we affirm his conviction.

AFFIRMED.