STATE of Iowa, Appellant,

v.

Kimberly Kay SYLVESTER, Appellee.

No. 93–698.

Supreme Court of Iowa.

May 25, 1994.

Rehearing Denied June 17, 1994.

and a motion to dismiss, arguing that a partner cannot be found guilty of embezzling partnership assets. The district court agreed and, finding the issue dispositive of the charges, dismissed the State's case. The State appeals pursuant to Iowa Code section 814.5(1)(a). The issue on appeal is whether a partner can be found guilty of embezzling partnership assets. Our review is for errors of law. Iowa R.App.P. 4.

## II. *Facts.*

The facts are not disputed. Sylvester's partner, Pam Clary, complained to police that Sylvester was embezzling from their partnership, Gregory's Hair Designers. After a police investigation, Sylvester was charged with second-degree theft.

## III. *Discussion of law.*

Under Iowa law, a person commits theft when the person:

> Misappropriates property which the person has in trust, or property of another which the person has in the person's possession or control, whether such possession or control is lawful or unlawful, by using or disposing of it in a manner which is inconsistent with or a denial of the trust or of the owner's rights in such property, or conceals found property, or appropriates such property to the person's own use, when the owner of such property is known to the person.

Iowa Code § 714.1(2).

Bonnie J. Campbell, Atty. Gen., Bridget Chambers, Asst. Atty. Gen., Denver Dillard, County Atty., and Harold L. Denton, Asst. County Atty., for appellant.

Karla M. Wolff, Cedar Rapids, for appellee.

PER CURIAM.

## I. *Introduction.*

The State appeals the district court's dismissal of charges against Kimberly Sylvester for second-degree theft. Iowa Code §§ 714.-1(2), .2(2) (1991). After being charged, Sylvester filed a motion to adjudicate law points

We held a partner could not be convicted for embezzling partnership funds in *Gary v. Northwestern Masonic Aid Association,* 87 Iowa 25, 31–32, 53 N.W. 1086, 1087–88 (1893). We affirmed the rule in *State v. Quinn,* 245 Iowa 846, 849, 64 N.W.2d 323, 324 (1954). The rationale for the rule rested on the common-law principle that:

> Partners sustain the character of principals as well as agents, and have a community of property and interest in partnership effects, and therefore cannot embezzle the funds of the partnership which they wrongfully apply to their individual use without mutual consent.
>
> . . . .

A partner cannot be guilty of embezzlement of partnership funds, because such partner combines in himself at once the character of principal and agent. The partners have a community of property and interest in the partnership effects. In law they are treated, in a qualified sense, as joint tenants of the partnership property, having an interest therein *per my et per tout.*

*Gary,* 87 Iowa at 31, 53 N.W. at 1087–88; *see Quinn,* 245 Iowa at 849–50, 64 N.W.2d at 327.

Since deciding *Quinn,* our legislature adopted the Uniform Partnership Law ("Uniform Partnership Act" or "UPA") outlining the nature of a partner's right in partnership property. Iowa Code §§ 486.8, .21, .25 (1993) (formerly codified at Iowa Code §§ 544.8, .21, .25 (1991)). Section 486.8 defines partnership property in relevant part as follows:

1. All property originally brought into the partnership stock or subsequently acquired by purchase or otherwise, on account of the partnership, is partnership property.

2. Unless the contrary intention appears, property acquired with partnership funds is partnership property.

*See also In re Estate of Allen,* 239 N.W.2d 163, 167 (Iowa 1976). Section 486.25 provides in pertinent part:

1. A partner is co-owner with the other partners of specific partnership property holding as a tenant in partnership.

2. The incidents of this tenancy are such that:

a. A partner, subject to the provisions of this chapter and to any agreement between the partners, has an equal right with other partners to possess specific partnership property for partnership purposes; but the partner has no right to possess the property for any other purpose without the consent of the other partners.

Section 486.21 provides in pertinent part:

1. Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by the partner without the consent of the other partners from any transaction connected with the formation, conduct, liquidation of the partnership or use of its property.

The Uniform Partnership Act is law in forty-nine states. Despite this fact, states are hardly uniform in their agreement regarding whether partners are immune from criminal liability for embezzling partnership property. *See generally* Jane M. Draper, Annotation, *Embezzlement, Larceny, False Pretenses, or Allied Criminal Fraud By a Partner,* 82 A.L.R.3d 822 (1978). The leading case against imposing criminal liability for embezzlement on partners, despite the UPA's provisions on partnership property, is *People v. Zinke,* 76 N.Y.2d 8, 556 N.Y.S.2d 11, 12–15, 555 N.E.2d 263, 264–67 (1990); *see also People v. Clayton,* 728 P.2d 723, 725–26 (Colo.1986); *State v. Birch,* 36 Wash.App. 405, 675 P.2d 246, 248–49 (1984); *Patterson v. Bogan,* 261 S.C. 87, 198 S.E.2d 586, 589 (1973).

In *Zinke,* the New York Court of Appeals distinguished possession or use of partnership property from ownership of partnership property. *Zinke,* 556 N.Y.S.2d at 12–15, 555 N.E.2d at 264–67. The court maintained that under the UPA, even a dishonest partner retains ownership of partnership property as a "tenant in partnership" until the partnership winds up. *Id.,* 556 N.Y.S.2d at 14, 555 N.E.2d at 266. Under the New York larceny statute, the crime occurs when a person "wrongfully takes, obtains or withholds 'property from an owner thereof' with intent to deprive the owner of it...." *Id.,* 556 N.Y.S.2d at 12, 555 N.E.2d at 264.

Colorado also adheres to the common-law rule that partners are immune from criminal liability for embezzling partnership property. *See Clayton,* 728 P.2d at 725. In *Clayton,* the Colorado Supreme Court held the UPA's provisions change the common-law concept of partnership property, but do not create or define, either expressly or implicitly, a crime. *Id.* at 725–26.

In *Birch,* the Washington Court of Appeals rejected the argument that because partners hold partnership property in trust, they are immune from criminal liability for embezzling partnership property. *Birch,* 675 P.2d at

248–49. The Washington theft statute analyzed in *Birch* required the property stolen to be property "of another." *Id.*, 675 P.2d at 247 n. 3. The court reasoned that because property held in trust does not convert title to the property to the trustee, the property is not that "of another." *See id.*, 675 P.2d at 249. The court acknowledged the UPA modified the common-law theory of joint tenancy regarding ownership of partnership property. *Id.* It noted the "tenancy in partnership" theory was developed "to deal with problems created by the joint tenancy theory." *Id.* Nonetheless, the court refused "to take such a nebulous concept and reduce it, by judicial opinion, to a criminal rule." *Id.* To rule otherwise, the court stated, would be to deprive citizens of fair notice of proscribed conduct. *Id.*

In other jurisdictions partners are criminally liable for embezzling partnership property. The leading case for this position is *People v. Sobiek*, 30 Cal.App.3d 458, 106 Cal. Rptr. 519, 522–26 (1973). *See also State v. Siers*, 197 Neb. 51, 248 N.W.2d 1, 6 (1976); *State v. Sasso*, 20 N.J.Super. 158, 89 A.2d 489, 490 (1952).

In *Sobiek*, the embezzlement statute was not expressly applicable to partners. However, under the statute, a "person otherwise entrusted with or having in his control property for the use of any other person" could be found criminally liable for embezzlement. *Sobiek*, 106 Cal.Rptr. at 522. The California Court of Appeals held the statute would include partners within its proscriptions. *Id.* Moreover, the court disagreed with other state interpretations of the term "of another." *Id.*, 106 Cal.Rptr. at 523. The court held these cases improperly extend the words "of another" into meaning "wholly of another." *Id.*

The California court also noted the trend in law away from recognizing partnerships as an aggregation of individuals and toward recognizing partnerships as separate legal entities. *Id.*, 106 Cal.Rptr. at 524. Moreover, the court believed:

It is both illogical and unreasonable to hold that a partner cannot steal from his partners merely because he has an undivided interest in the partnership property. Fundamentally, stealing that portion of the partners' shares which does not belong to the thief is no different from stealing the property of any other person.

*Id.*, 106 Cal.Rptr. at 525–26.

A New Jersey court construed a statute making it a crime for agents to embezzle property from their principals in *Sasso*, 89 A.2d at 489. The court held that under the UPA partners are agents of the partnership. *Id.*, 89 A.2d at 490. The partnership, according to the court, is the principal. *Id.* The court also held that partners are responsible as fiduciaries to the partnership. *Id.* The court then held the terms of the embezzlement statute could not be read exclusive of the UPA. *Id.*

## IV. *Contentions of the parties.*

■ The State argues that the UPA changes the common-law nature of partnership property. The State contends that under the UPA partners hold partnership property in trust for the partnership. Because of this trust relationship, the State contends the misappropriation of partnership property constitutes theft under Iowa Code section 714.1(2).

Sylvester contends that in the absence of a specific criminal statute providing otherwise, the State cannot convict partners for embezzling partnership property. Sylvester also argues that the UPA does not abrogate the common-law rule regarding embezzlement of partnership property. According to Sylvester, the UPA provides civil remedies for her misappropriation of partnership assets, but does not criminalize her conduct.

## V. *Embezzlement of partnership property.*

We are persuaded by the authorities holding that partners are criminally liable for embezzling partnership property for the following reasons. First, our theft statute criminalizes the misappropriation of property held in trust. Our statute is similar to the statute analyzed by the California Court of Appeals in *Sobiek*. *See* Iowa Code § 714.-1(2). The UPA provides that partners "hold as trustee for it any profits derived by the

partner without the consent of other partners from any transaction connected with the . . . conduct . . . of the partnership or use of its property." *Id.* § 486.21. Thus, partners, as trustees of the partnership property, fall within the scope of our theft statute. *See id.* § 714.1(2).

Second, we believe this holding to be more in line with the entity theory embodied in the UPA provisions regarding partnership property. Functionally, under the entity theory, the partnership, rather than the partners owns its property. *See id.* § 486.8(2); *Allen,* 239 N.W.2d at 163; Judson A. Crane & Allen R. Bromberg, *Law of Partnership* § 40, at 230 (1968) [hereinafter Crane & Bromberg]; *see also* Donald J. Weidner, *A Perspective to Reconsider Partnership Law,* 16 Fla.St. U.L.Rev. 1, 10–12 (1988) [hereinafter Weidner]. Although partners are referred to as "co-owners" of partnership property in a "tenancy in partnership," their ownership rights are sharply circumscribed by other UPA provisions. *See* Iowa Code § 486.25 (partners have no right to possess partnership property for nonpartnership purposes without consent of other partners); *see also* Crane & Bromberg § 40(b), at 230. Thus, under the entity approach, in addition to being a trustee, when a partner steals partnership property the partner steals the property "of another."

Moreover, like the California Court of Appeals in *Sobiek,* we find a contrary conclusion illogical and unreasonable. *Sobiek,* 106 Cal. Rptr. at 525–26. Embezzling a partners' property is not different in consequence from embezzling from someone else. *Id.* We hold a partner is criminally liable under Iowa law for embezzling partnership property. We recognize this decision overrules *Gary v. Northwestern Masonic Aid Association* in part and casts doubt on the reasoning in *State v. Quinn.* We caution that this holding applies only to partnerships as defined under Iowa Code § 486.6. We intimate no opinion regarding partnerships not embraced by the definition under Iowa Code § 486.6.

## VI.  *Due process*

■ Sylvester also contends the application of the theft statute to her in this case is, under the vagueness doctrine, violative of her due process rights under the Fifth and Fourteenth Amendments to the U.S. Constitution, and under Article I, section 9 of the Iowa Constitution. Moreover, she contends that to hold her criminally liable under this statute would be tantamount to punishing her for a common-law crime.

■ A person challenging the validity of a statute carries the heavy burden of rebutting a presumption of constitutionality. *State v. Duncan,* 414 N.W.2d 91, 95 (Iowa 1987). "[A] statute will not be declared unconstitutional unless it clearly, palpably and without doubt, infringes the constitution." *Id.* Unconstitutional vagueness must be demonstrated beyond a reasonable doubt. *Id.* Statutes are not unconstitutionally vague if their meaning is fairly ascertainable through reference to similar statutes, common law, other judicial determinations, the dictionary, or the common and generally accepted meaning of the words themselves. *Id.*

■ Several important values underlie the vagueness doctrine. As the United States Supreme Court stated:

> First, because we assume that [people are] free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

*Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–2299, 33 L.Ed.2d 222, 227–28 (1972) (footnotes omitted). To withstand constitutional attack, a statute must therefore satisfy two standards. *Duncan,* 414 N.W.2d at 96. First, "it must give a person of ordinary intelligence fair notice of what is prohibited." *Id.* Second, "it must

provide an explicit standard for those who apply it." *Id.* Statutes threatening to inhibit the exercise of constitutional rights receive a more stringent vagueness analysis. *Id.*

■ At the outset of our analysis, we do not believe our interpretation in this case amounts to the creation of a common-law crime. Common-law crimes are not recognized in Iowa. *State v. Lamb,* 209 Iowa 132, 133, 227 N.W. 830, 831 (1929). However, that does not prevent this court from resorting to other statutes, the common law, the dictionary, or common sense for definition of statutory terms. *See id.; see also Duncan,* 414 N.W.2d at 95. Reliance on such sources is often necessary when analyzing criminal statutes involving property rights. *See, e.g., State v. Zeien,* 505 N.W.2d 498, 499 (Iowa 1993); *State v. Mann,* 463 N.W.2d 883, 884 (Iowa 1990).

We believe our theft statute is not void for vagueness. To the contrary, we believe the statutory language itself to be narrow and precise. It was the nebulous nature of the concept of partnership property that has changed and alters our analysis. That issue decided, the applicability of the theft statute is clear. We hold that partners pursuant to our Uniform Partnership Law are not immune from conviction for embezzling partnership property. We reverse the district court's dismissal of the charges against defendant and remand for prosecution.

### REVERSED AND REMANDED.

All Justices concur except SNELL, J., joined by LAVORATO, J., who dissent.

SNELL, Justice (dissenting).

I respectfully dissent.

The trial court was right in applying the law as decided by our court one hundred and one years ago and reaffirmed by our court as recently as forty years ago. It is for the legislature to enact the substantive criminal law. The theft statute, Iowa Code section 714.1, has not been changed by the legislature in all these years since our interpretation that the statute does not criminalize the misappropriation of partnership assets by a partner. The majority's newly found crime is an unwarranted excursion into the legislative domain. In so doing it also violates the due process rights of the defendant. I would affirm the trial court's dismissal of the second-degree theft charges.

To justify its finding that defendant's acts are now included in our theft statute, although we have said they were not, the majority reaches outside the definition of theft in section 714.1 to analyze the Uniform Partnership Act in chapter 486. Nothing in the theft statute definition now is different in substance from that interpreted by us in *Gary v. Northwestern Masonic Aid Association,* 87 Iowa 25, 53 N.W. 1086, 1087–88 (1893), and in *State v. Quinn,* 245 Iowa 846, 849, 64 N.W.2d 323, 324 (1954). There is nothing in the theft statute that refers to the Uniform Partnership Act, enacted in 1973, or to suggest that it has become a part of the criminal code. Nevertheless, it is grafted onto the theft definition by the majority as a vehicle for changing the substantive law, without benefit of a change in the theft definition itself.

Other state courts have refused to adopt the reasoning that the Uniform Partnership Act changes the meaning of theft statutes. For example, the appellate court in Washington, in *State v. Birch,* 36 Wash.App. 405, 675 P.2d 246, 249 (1984), considered the same issues as we now decide, and concluded that the entity approach or tenancy in partnership theory was too nebulous a concept to reduce by judicial opinion to a criminal rule. I agree with the Washington court. *See also People v. Zinke,* 76 N.Y.2d 8, 556 N.Y.S.2d 11, 12–15, 555 N.E.2d 263, 264–67 (N.Y.1990).

The majority's decision not only changes the law but applies it retroactively without notice. *Bouie v. City of Columbia,* 378 U.S. 347, 352–54, 84 S.Ct. 1697, 1702, 12 L.Ed.2d 894, 899–900 (1964) speaks directly on this issue.

There can be no doubt that a deprivation of the right of fair warning can result not only from vague statutory language but also from an unforeseeable and retroactive judicial expansion of narrow and precise statutory language. As the Court recognized in *Pierce v. United States,* 314 U.S.

306, 311 [62 S.Ct. 237, 240, 86 L.Ed. 226], "judicial enlargement of a criminal Act by interpretation is at war with a fundamental concept of the common law that crimes must be defined with appropriate definiteness." Even where vague statutes are concerned, it has been pointed out that the vice in such an enactment cannot "be cured in a given case by a construction in that very case placing valid limits on the statute," for the objection of vagueness is twofold: inadequate guidance to the individual whose conduct is regulated, and inadequate guidance to the triers of fact. The former objection could not be cured retrospectively by a ruling either of the trial court or the appellate court, though it might be cured for the future by an authoritative judicial gloss.... Freund, The Supreme Court and Civil Liberties, 4 Vand.L.Rev. 533, 541 (1951).

> (Citation omitted.) If this view is valid in the case of a judicial construction which adds a "clarifying gloss" to a vague statute, making it narrower or more definite than its language indicates, it must be *a fortiori* so where the construction unexpectedly broadens a statute which on its face had been definite and precise. [Citation omitted.] Indeed, an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law, such as Art. I, § 10, of the Constitution forbids. An *ex post facto* law has been defined by this Court as one "that makes an action done before the passing of the law, and which was *innocent* when done, criminal; and punishes such action," or "that *aggravates* a *crime*, or makes it *greater* that it was, when committed." *Calder v. Bull,* 3 Dall. 386, 390 [1 L.Ed. 648]. If a state legislature is barred by the Ex Post Facto Clause from passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction. Cf. *Smith v. Calhoon [Cahoon]* 283 U.S. 553, 565 [51 S.Ct. 582, 586, 75 L.Ed. 1264]. The fundamental principle that "the required criminal law must have existed when the conduct in issue occurred," Hall, General Principles of Criminal Law (2d ed. 1960), at 58–59, must apply to bar retroactive criminal prohibitions emanating from courts as well as from legislatures. If a judicial construction of a criminal statute is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue," it must not be given retroactive effect. *Id.,* at 61.

(Footnote omitted).

I believe the result in the instant case, as in *Bouie,* violates defendant's due process rights under the Fourteenth Amendment because of vagueness. I also believe it is unwise as a matter of public policy to transfer to the criminal courts the frequent disputes between partners about whether an act by one partner is authorized as partnership business. Those questions more properly belong in the civil court arena where they have been adequately resolved for a hundred years.

LAVORATO, J., joins this dissent.