**STATE of Iowa, Appellee,**

v.

**Jose Dario RUESGA, Appellant.**

No. 98–2071.

Supreme Court of Iowa.

Nov. 16, 2000.

Linda Del Gallo, State Appellate Defender, and David Arthur Adams, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Bridget A. Chambers, Assistant Attorney General, John P. Sarcone, County Attorney, and Nan Horvat and Melodee Hanes, Assistant County Attorneys, for appellee.

NEUMAN, Justice.

Defendant, Jose Dario Ruesga, was convicted in 1992 of felony child endangerment and willful injury for unspeakable child abuse inflicted on four-year-old Jonathan Waller. Jonathan survived in a fragile state for nearly six more years but, upon his death, the State charged Ruesga with first-degree murder. Ruesga now seeks to reverse the conviction entered upon the jury's guilty verdict. He claims entitlement to a rule at common law that prevented the government from charging a person with homicide unless the victim died within a year and a day from when the fatal blows were struck. The district court found no basis for application of this "year and a day" rule in Iowa, and neither do we. Nor are we persuaded that Ruesga is entitled to relief on any other ground urged for reversal. We therefore affirm the judgment and sentence of the district court.

On March 5, 1992, paramedics were called to the home of Michelle and David Crouse where they observed Ruesga cradling an unconscious Jonathan Waller. The paramedics were told the child had fallen. Their examination revealed severe and extensive bruising on nearly every part of the child's body. Jonathan was rushed to a hospital where doctors performed emergency surgery to relieve swelling caused by a severe head injury. Despite their efforts, Jonathan lost the use of nearly half his brain. Doctors also discovered that the child had a broken left arm, a torn liver, a burned right hand and what appeared to be an "R" carved into the flesh of his buttock. Ruesga, who was Jonathan's mother's live-in boyfriend, was ultimately convicted of three counts of child endangerment and one count of willful injury.

Jonathan, meanwhile, spent over 100 days in the hospital before being released to the custody of his aunt. Over the next six years Jonathan required constant care to meet his basic needs. He endured repeated hospitalizations for complications, such as a seizure disorder, arising from his injuries. He finally succumbed to pneumonia on April 7, 1998, secondary to the brain injury inflicted by Ruesga in 1992.

The State charged Ruesga with first-degree murder in violation of Iowa Code sections 707.1 and 707.2 (1997). Ruesga twice moved to dismiss the indictment. He first claimed that a prosecution for murder was barred by the common law "year and a day" rule. The district court

overruled the motion. Ruesga then moved to dismiss on the ground that his prior conviction for felony child endangerment prevented the State from prosecuting him for felony murder, based on the underlying crime of felony child endangerment, without violating the Double Jeopardy Clause. The district court likewise overruled this motion and the case proceeded to trial. A jury found Ruesga guilty as charged and this appeal followed.

## I. Scope of Review.

To the extent Ruesga challenges the district court's application of the common law and interpretation of criminal statutes, our review is for the correction of errors at law. *State v. Eickelberg*, 574 N.W.2d 1, 3 (Iowa 1997). Ruesga's double jeopardy and ineffectiveness of counsel claims, being constitutional in nature, require a de novo review of the record. *State v. Predka*, 555 N.W.2d 202, 204 (Iowa 1996).

## II. Issues on Appeal.

**A. *Common law rule of "year and a day."*** Ruesga argues the district court erred by rejecting his common law "year and a day" defense to murder. As will be more fully explained, the rule creates an irrebuttable presumption that after one year and one day from the infliction of an injury, the injury may not—as a matter of law—furnish the basis for a homicide prosecution. On appeal Ruesga concedes the rule forms no part of the statutory elements of the crime of murder; neither does he claim it is a procedural rule. He simply argues the rule constitutes an absolute defense to murder. The State counters that the rule has never been—nor is it currently—recognized at common law in Iowa, either as an element of the offense or as a potential defense. For the reasons that follow, we agree.

Both parties concede that "a year and a day" formed a recognized part of the English common law dating back to the thirteenth century. *See State v. Rogers*, 992 S.W.2d 393, 396 (Tenn.1999). During the late nineteenth century the United States Supreme Court recognized and applied the rule in federal prosecutions for murder, noting the rule's general applicability except "in jurisdictions where it may be otherwise prescribed by statute." *Louisville, Evansville & St. Louis R.R. v. Clarke*, 152 U.S. 230, 239, 14 S.Ct. 579, 581, 38 L.Ed. 422, 424 (1894); *Ball v. United States*, 140 U.S. 118, 133, 11 S.Ct. 761, 766, 35 L.Ed. 377, 384 (1891). The rule derives from the primitive nature of medical arts as they existed in the thirteenth century. *Rogers*, 992 S.W.2d at 396. When a lengthy lapse of time occurred between the act allegedly causing injury and death, proof of causation was a formidable and speculative task. *Id.* Rationale for the doctrine also stemmed from early procedural rules that prevented witnesses with personal knowledge from testifying, leaving jurors to determine causation issues on their own. *Id.* at 397. Finally, the "year and a day" rule served to ameliorate the harsh results of a death penalty that was routinely imposed for all degrees of homicide. *Id.*

At least one federal court, feeling bound by precedent established in *Ball* and *Louisville, Evansville & St. Louis R.R.*, has quite recently acknowledged the continuing vitality of the rule in federal prosecutions. *United States v. Chase*, 18 F.3d 1166, 1171–73 (4th Cir.1994). The great majority of states, however, have abrogated the rule, judicially or legislatively. Ten courts, finding the rule outdated in light of medical advances that now prolong life far beyond one year and one day from when an injury is inflicted, have judicially abrogated the rule, prospectively or retroactively, depending on whether the rule is viewed as a substantive element of murder or a rule of evidence. *See, e.g., United States v. Jackson*, 528 A.2d 1211, 1220 (D.C.1987) (prospectively abolishing judicially-created rule because rationale no longer applicable); *Jones v. Dugger*, 518 So.2d 295, 298 (Fla.Dist.Ct.App.1987) (finding Florida had not previously dealt with

rule, but followed other courts in abrogating it because reasoning no longer valid); *Commonwealth v. Lewis,* 381 Mass. 411, 409 N.E.2d 771, 775 (1980) (retrospectively abrogating rule); *People v. Stevenson,* 416 Mich. 383, 331 N.W.2d 143, 147, 149 (1982) (finding court has power to modify or change common law when change is required, prospectively abrogating rule); *State v. Young,* 77 N.J. 245, 390 A.2d 556, 560–61 (1978) (prospectively abrogating rule); *State v. Gabehart,* 114 N.M. 183, 836 P.2d 102, 105 (Ct.App.1992) (abrogating rule as a common law defense because its justifications no longer valid); *State v. Vance,* 328 N.C. 613, 403 S.E.2d 495, 499 (1991) (rule, applied in early North Carolina case law, abolished prospectively as it had become obsolete under N.C. Gen.Stat. § 4–1 (1986)); *Commonwealth v. Ladd,* 402 Pa. 164, 166 A.2d 501, 506–07 (1960) (holding that "a year and a day" is a common law rule of evidence which court could retrospectively abrogate); *State v. Pine,* 524 A.2d 1104, 1107 (R.I.1987) (finding that although rule had been specifically adopted by legislature as part of state's common law, its application was originally judicial and court could prospectively abrogate it); *Rogers,* 992 S.W.2d at 401 (holding that court had special duty to abrogate judicially-created rule no longer supported by underlying rationale).

Four state courts have held that legislative passage of comprehensive state criminal codes has effectively abolished common law crimes, including the concept of "a year and a day." *See State v. Cross,* 260 Ga. 845, 401 S.E.2d 510, 511 (1991); *People v. Carrillo,* 164 Ill.2d 144, 207 Ill.Dec. 16, 646 N.E.2d 582, 585 (1995); *People v. Brengard,* 265 N.Y. 100, 191 N.E. 850, 853 (1934); *State v. Hudson,* 56 Or.App. 462, 642 P.2d 331, 332–33 (1982). Only two states have upheld "a year and a day" as an ongoing part of their criminal codes. In *State v. Minster,* 302 Md. 240, 486 A.2d 1197, 1199–200 (1985), the Maryland court deferred to the legislature, which later abolished the rule. The Oklahoma Criminal Court of Appeals, ruling in a 1959 case,

likewise deferred to legislative wisdom on the question. *Elliott v. Mills,* 335 P.2d 1104, 1113 (Okla.Crim.App.1959).

▉▉▉▉ We are unaware of any reported decisions in Iowa that have applied, or even discussed, the common law rule urged upon us by Ruesga. The rule was, however, a part of Iowa's statutory law for a brief period. The 1843 Code of the Territory of Iowa, chapter 49, section 4, stated: "In order to make the killing murder, it is required that the person injured die within a year and a day after the stroke received or the cause of death administered...." Significantly, neither the Revised Code of 1860 nor any subsequent Code has included this temporal element in the definition of murder. When a new law does not contain language included in a previous version, a change in the law is presumed. *State v. Allison,* 576 N.W.2d 371, 373 (Iowa 1998). And, by statute, "[a] public offense is that which is prohibited by statute and is punishable by fine or imprisonment." Iowa Code § 701.2. There are no common-law crimes in Iowa. *State v. Sylvester,* 516 N.W.2d 845, 850 (Iowa 1994).

Ruesga seeks to circumvent the obvious conclusion that the rule, once codified, has long since been repealed by our legislature. He claims that notwithstanding repeal of the rule as an element of the *offense* of murder, the rule nevertheless retains its vitality, under the common law, as a complete *defense* to prosecution. We reject this attempt to revive the rule in the guise of a defense. Its purpose, from the defendant's perspective, remains unchanged: to arbitrarily limit the causation inquiry where a wound does not prove, in Ruesga's words, "speedily fatal."

Given the absence of proof that the defense has ever before been recognized as part of Iowa's common law, now would seem an unlikely time to consider it. Once-fatal injuries are now readily treatable, thanks to advancements in modern medicine. Medical experts answer ques-

tions of causation with precision. Just such medical advances extended the life of Jonathan Waller. And modern medical expertise indisputably connected the brain injury inflicted by Ruesga in 1992 with the child's death by pneumonia in 1998. As other courts have wisely recognized, it would be the height of *injustice* to permit an assailant to escape punishment based on a fortuitous combination of medical marvel and archaic rule. *See, e.g., Jackson,* 528 A.2d at 1220 ("Surely, the dictates of justice and public policy favor a removal of a 'capricious' obstacle to a prosecution for murder where the victim died fourteen months after having his brains blown out by a gunshot to the rear of his head which rendered him a paraplegic."); *Gabehart,* 836 P.2d at 105 ("[I]t would be incongruous if developments in medical science that allow a victim's life to be prolonged were permitted to be used to bar prosecution of an assailant. . . .").

In short, the year and a day rule—if it ever existed at common law in Iowa—was legislatively abrogated in 1860. Given the State's undiminished duty to prove causation beyond a reasonable doubt in every prosecution for murder, we find no basis in justice or reason to accept Ruesga's claim that some remnant of the common law rule remains. The district court correctly rejected Ruesga's arguments to the contrary. No ground for reversal appears.

■ **B.** *Double Jeopardy and Merger.* Ruesga also moved to dismiss on the ground the State violated his constitutional right to be free from double jeopardy when it pursued this prosecution for first-degree murder after he had already been convicted for felony child endangerment arising from the same incident. His argument rests on a claim that felony child endangerment is a necessarily included lesser offense of felony murder. In the alternative he claims entitlement to merger of the sentences for the two convictions under Iowa Code section 701.9. The district court rejected these contentions and, we think, rightly so.

■ The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, applicable to the states under the Fourteenth Amendment, protects defendants from prosecution for the same offense after conviction or acquittal, and against multiple punishments for the same offense. *Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187, 194 (1977). To determine whether an offense constitutes the "same offense" for double jeopardy purposes, courts apply the familiar "legal elements test":

> [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not. . . .

*Id.* at 166, 97 S.Ct. at 2225, 53 L.Ed.2d at 194 (quoting *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932)).

Ruesga argues that his current conviction for first-degree murder cannot pass constitutional muster because it rests on proof of his prior conviction for felony child endangerment. *See* Iowa Code § 726.6(2) (when serious injury results, crime of child endangerment classified as felonious assault); *State v. Rhode,* 503 N.W.2d 27, 38 (Iowa App.1993). This court has long held, however, that "the felony underlying a felony murder charge is not a lesser-included offense of felony murder." *State v. Walters,* 426 N.W.2d 136, 141 (Iowa 1988). We reasoned in *Walters* that, to sustain a conviction under Iowa Code section 707.2, the State is not required to prove the defendant's *commission* of the underlying felony but only his *participation* in it. *Id.; accord Rhode,* 503 N.W.2d at 41. Thus no double jeopardy violation is implicated. *See Walters,* 426 N.W.2d at 141 (no valid claim of former jeopardy where defendant convicted of first-degree burglary and felony murder); *State v. Aswegan,* 331 N.W.2d 93,

97–98 (Iowa 1983) (underlying felony of arson not lesser-included offense in prosecution for felony murder); *Rhode,* 503 N.W.2d at 41 (no double jeopardy violation where felony child endangerment furnishes basis for felony murder conviction because State not required to prove commission of underlying felony to sustain conviction for felony murder).

Even if felony child endangerment were a lesser-included offense of felony murder, Ruesga could not prevail on his double jeopardy claim. An exception to the doctrine has been recognized where the State is prevented from proceeding on a more serious charge because additional facts necessary to sustain that charge have not occurred or been discovered at the time the lesser charge is prosecuted. *Brown,* 432 U.S. at 169 n.7, 97 S.Ct. at 2227 n.7, 53 L.Ed.2d at 196 n.7; *Diaz v. United States,* 223 U.S. 442, 449, 32 S.Ct. 250, 251, 56 L.Ed. 500, 503 (1912). In *Diaz,* the Supreme Court held that double jeopardy considerations presented no obstacle to a prosecution for murder, even though Diaz had already been prosecuted for battery arising out of the same incident, because the victim had not yet died at the time of the trial for battery. *Diaz,* 223 U.S. at 449, 32 S.Ct. at 251, 56 L.Ed. at 503.

Our court of appeals followed the *Diaz* exception in *State v. Henry,* 483 N.W.2d 2, 4 (Iowa App.1992). Similar to the case before us, the victim in *Henry* sustained brain injuries that ultimately resulted in his death, but not before the defendant pleaded guilty and was sentenced for willful injury. The court held the State was not required to predict the future; because the victim's death was a "new fact, the trial for murder did not place the defendant twice in jeopardy." *Henry,* 483 N.W.2d at 4.

Ruesga claims on appeal that *Henry*'s holding contravenes the prohibition against successive prosecutions lying at the heart of the Double Jeopardy Clause. We disagree with his premise and decline his invitation to overrule *Henry.* It is true

that the rule is designed to protect defendants from State misconduct and the burden of repeatedly "running the gauntlet." But, as the Ohio Supreme Court has wisely observed,

these considerations pale when a new offense matures only after the first trial is concluded. When it is impossible for the state to join all substantive offenses at one trial, the inconvenience to the defendant is clearly outweighed by the public's interest in assuring that the defendant does not fortuitously escape responsibility for his crimes. A second trial, under such circumstances, cannot be characterized as harassment, but must be considered as reasonably serving the public need.

*State v. Thomas,* 61 Ohio St.2d 254, 400 N.E.2d 897, 904 (1980), *overruled on other grounds by State v. Crago,* 53 Ohio St.3d 243, 559 N.E.2d 1353 (1990); *see also People v. Harding,* 443 Mich. 693, 506 N.W.2d 482, 487 (1993) (conviction for felony murder upheld where victim died after prosecution for underlying crimes of armed robbery, assault and possession of firearm during commission of felony).

▇▇ We likewise reject Ruesga's claim that the sentences for his prior convictions merge, as a matter of law, with his conviction for murder. Our merger statute directs that "[n]o person shall be convicted of a public offense which is necessarily included in another public offense of which the person is convicted" and requires the court to enter conviction on the greater offense only. Iowa Code § 701.9. Ruesga is not entitled to the benefit of section 701.9 because, as already noted, the underlying felony in a felony murder prosecution is not a lesser-included offense of felony murder. *Walters,* 426 N.W.2d at 141; *Rhode,* 503 N.W.2d at 41. The district court committed no error in sentencing him, without regard to his prior convictions, for the death of Jonathan Waller.

▇▇ C. *Ineffective Assistance.* Ruesga urges several grounds for reversal

based on alleged ineffective assistance of counsel. To prevail on such a claim, a defendant must prove (1) counsel's performance fell outside a normal range of competency, and (2) defendant suffered prejudice as a result; that is, but for counsel's errors the outcome of the proceedings would have been different. *State v. McKettrick*, 480 N.W.2d 52, 55 (Iowa 1992). We generally preserve ineffective assistance claims for postconviction proceedings to permit development of the record and to give counsel an opportunity to defend the challenged action or inaction. *See id.* at 56. We may resolve such claims on direct appeal, however, when the record is sufficient to address them. *Id.*

The State contends that Ruesga's claims are sufficiently vague or unmeritorious to warrant outright rejection on direct appeal. *See State v. White*, 337 N.W.2d 517, 519–20 (Iowa 1983). However we think they merit preservation for possible postconviction treatment. They involve claims of inadequate investigation and preparation for trial, as well as Ruesga's claim that counsel failed to adequately confer with him during their "hybrid" representation in which Ruesga tackled some of the witness examination and argument pro se.

*White* involved "but a single paragraph" devoted to appellant's ineffectiveness claim, an assertion deemed insufficient to minimally enable this court to assess the contentions. *Id.* at 519. Here, by contrast, the record reveals repeated concerns expressed by Ruesga before and during trial, as well as in the brief of appellate counsel, relating to strategic and tactical decisions deemed ineffective. Without speculating on the merit of these contentions, we preserve them for possible postconviction review.

**D.** *Additional Pro Se Issues.* Ruesga also claims, by way of a supplemental pro se brief, that he is entitled to reversal based on the trial court's denial of his motions to continue and to proceed pro se at trial. Because we find no merit in either of these contentions, we address them only briefly.

■ *Continuance.* Just over a week before trial was scheduled to begin, Ruesga filed a pro se motion to continue. Defense counsel had already sought, and received, a five-week continuance and change of venue. Although defendant now implies that the denial of a second continuance compromised his right to defend himself, his focus during the motion hearing was on counsel's alleged inability to find and depose essential character witnesses in the allotted time. Defense counsel denied additional time was necessary, questioning the number and identity of the proposed witnesses. Ruesga was unable to name or disclose the whereabouts of the witnesses he deemed so crucial to his defense.

■ Motions to continue are disfavored and are justifiable only upon a "showing of good and compelling cause." Iowa R.Crim.P. 8.1(2). The burden rests on the one seeking a continuance to show that "substantial justice will be more nearly obtained" thereby. Iowa R.Civ.P. 183. Given the record before us, we find no abuse in the trial court's discretionary decision to proceed to trial without further delay.

■ *Motion to proceed pro se.* At the pre-trial conference at which the continuance was considered, Ruesga expressed dissatisfaction with his appointed counsel and moved, orally, to proceed pro se. Hearing on the motion was deferred until four days before trial. At that time Ruesga acknowledged that he could not competently cross-examine the State's witnesses, particularly the medical professionals who would provide testimony related to cause of death. Ruesga ultimately consented to continued representation by his attorneys with the understanding that he could participate pro se during trial as he chose. The case thus proceeded to trial on this "hybrid" representation basis.

Ruesga now claims he was denied his Sixth Amendment right to self-representa-

tion. *See Faretta v. California,* 422 U.S. 806, 818–19, 95 S.Ct. 2525, 2532–33, 45 L.Ed.2d 562, 572–74 (1975). His claim finds no support in the record. He plainly invited counsel's substantial participation in the cross-examination of the State's expert witnesses. Thus, in the absence of proof that Ruesga later terminated such representation, we are entitled to presume counsel's further representation in the matter was with defendant's consent. *McKaskle v. Wiggins,* 465 U.S. 168, 183, 104 S.Ct. 944, 953, 79 L.Ed.2d 122, 136 (1984). No ground for reversal appears.

**AFFIRMED.**

McGIVERIN, S.J.*, participates in place of TERNUS, J., who takes no part.