**IN THE COURT OF APPEALS OF IOWA**

No. 4-038 / 13-1956
Filed February 19, 2014

**IN THE INTEREST OF J.F.,**
    **Minor Child,**

**R.M., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Joseph W. Seidlin,

District Associate Judge.

A mother appeals from the order terminating her parental rights.

**AFFIRMED.**

Jessica A. Millage of Millage Law Firm, P.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Kathrine Miller-Todd, Assistant

Attorney General, John P. Sarcone, County Attorney, and Amanda Johnson,

Assistant County Attorney, for appellee State.

Michelle Saveraid of the Youth Law Center, Des Moines, for minor child.

Considered by Vogel, P.J., and Tabor and McDonald, JJ.

**McDONALD, J.**

Raelyn appeals an order pursuant to Iowa code section 232.116(1)(d), (e), (h), and (*l*) (2013) terminating the parental rights between her and her child, J.F. Raelyn contends that the State did not prove grounds for termination by clear and convincing evidence and that the court erred in finding termination of her parental rights was in the best interest of her child.

I.

We review de novo proceedings terminating parental rights. *See In re H.S.*, 805 N.W.2d 737, 745 (Iowa 2011). We examine both the facts and law, and we adjudicate anew those issues properly preserved and presented. *See In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995). We give weight to the findings of the juvenile court, especially concerning the credibility of witnesses, but we are not bound by them. *See id.* at 480–81. While giving weight to the findings of the juvenile court, our obligation to review termination proceedings de novo means our review is not a rubber stamp of what has come before. We will thus uphold an order terminating parental rights only if there is clear and convincing evidence of grounds for termination. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). Evidence is "clear and convincing" when there are no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.*

II.

Termination of parental rights under chapter 232 follows a three-step analysis. *See In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). First, the court must determine if a ground for termination under section 232.116(1) has been

established. *See id.* Second, if a ground for termination is established, the court must apply the framework set out in section 232.116(2) to decide if proceeding with termination is in the best interests of the child. *See id.* Third, if the statutory best-interests framework supports termination of parental rights, the court must consider if any statutory exceptions set forth in section 232.116(3) should serve to preclude the termination of parental rights. *See id.*

A.

Raelyn first contends the State failed to prove by clear and convincing evidence a ground for termination. Her rights to J.F. were terminated pursuant to Iowa Code section 232.116(1)(d), (e), (h), and (*l*). Where, as here, the district court terminated parental rights on more than one statutory ground, we will affirm if at least one ground has been proved by clear and convincing evidence. *See In re R.R.K.*, 544 N.W.2d 274, 276 (Iowa Ct. App. 1995). In this case, we conclude that there is clear and convincing evidence supporting termination of Raelyn's parental rights under section 232.116(1)(h).

As relevant here, to establish this ground for termination, the State must prove by clear and convincing evidence that the child "cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time." Iowa Code § 232.116(1)(h)(4); *In re Chad*, 318 N.W.2d 213, 218 (Iowa 1982). A child cannot be returned to the custody of the child's parent under section 232.102 if by doing so the child would be exposed to any harm amounting to a new child in need of assistance adjudication or without remaining a child in need of assistance. *See R.R.K.*, 544 N.W.2d at 277; *see also In re M.M.*, 483 N.W.2d

812, 814 (Iowa 1992). "The threat of probable harm will justify termination, and the perceived harm need not be the one that supported the child's initial removal from the home." *M.M.*, 483 N.W.2d at 814; *see In re C.M.T.*, 433 N.W.2d 55, 56 (Iowa Ct. App. 1988).

By way of background, Raelyn is nineteen years old, and J.F. is more than one year old. Raelyn and J.F. moved from Texas to Iowa in September 2012 along with Raelyn's paramour, allegedly to avoid Texas Child Protective Services. Raelyn has two children in Texas. Those children are not in her custody, and she does not have any contact with one of the children. Raelyn and J.F. first came to the attention of the Iowa Department of Human Services in November 2012 following several domestic disputes between Raelyn and her paramour to which J.F. was exposed. The child was removed from her custody at that time and ultimately adjudicated in need of assistance on several grounds on February 8, 2013. On March 11, 2013, the child was confirmed to be in need of assistance and placed in the temporary legal custody of the department for foster care placement. The juvenile court held a termination hearing on November 8, 2013.

At the time of the termination hearing, clear and convincing evidence established that J.F. could not be returned to Raelyn because returning J.F. to Raelyn would expose the child to adjudicatory harm. *See* Iowa Code §§ 232.2(6)(c)(2) (defining child in need of assistance as one likely to suffer harmful effects due to failure to exercise a reasonable degree of care in supervision of child); 232.2(6)(g) (defining child in need of assistance where parent fails to exercise a minimal degree of care in supplying the child with adequate food,

clothing, or shelter); 232.2(6)(n) (defining child in need of assistance as one whose parent's mental capacity or drug or alcohol abuse results in the child not receiving adequate care).

Raelyn is not able to provide J.F.'s most basic needs. Between the time of removal and the termination hearing, Raelyn was not able to obtain safe and stable housing. She had ten residences over this time period. She was evicted from one residence. At other times she resided with people she barely knew and who had criminal history. Raelyn does not have employment. She does not have a car and has great difficulty using public transportation. For example, a service provider had to take Raelyn to her visitations with J.F. and other appointments because Raelyn refused to use or to learn how to use public transportation.

The evidence showed Raelyn has not corrected her behaviors that create a risk to J.F. One of the grounds for removal was Raelyn exposed J.F. to domestic violence and unstable relationships. After removal, Raelyn claimed she terminated her relationship with her paramour from Texas, but the evidence showed that she was still in contact with him. In addition, during the time J.F. was removed from her custody, she resided with persons with criminal history. Although Raelyn claims she has corrected this risky behavior, she admitted at the termination hearing that she is pregnant with her fourth child from a father whom she did not want to identify.

Raelyn also failed to complete the programming required to ensure that she could adequately provide for and supervise J.F. Raelyn was diagnosed with mental health needs, but she resisted any treatment. Raelyn was required to

complete parenting and other skill development classes, but she was unsuccessfully discharged from the programs due to nonattendance. Raelyn was required to undergo a substance abuse evaluation and then treatment, but she refused. Not only did she refuse treatment, but she continued to use during the time J.F. was removed from her custody. She tested positive for controlled substances during the months of January, February, and March 2013, and she refused to provide a sample for further testing in November 2013 immediately prior to the termination hearing.

In sum, clear and convincing evidence established that J.F. would remain a child in need of assistance upon being returned to Raelyn. She cannot provide J.F.'s basic needs. Her poor decision making in selecting paramours and associates exposes J.F. to the risk of harm. And her failure to address her mental health concerns and substance abuse also establish that she is not willing or able to provide a reasonable degree of care and supervision for J.F.

B.

Raelyn contends that even if the State proved grounds for termination of her parental rights, termination is not in the best interests of J.F. pursuant to section 232.116(2). In making the determination of whether termination of parental rights is in the best interests of the children, the court must consider the relevant statutory factors. Further:

> In seeking out those best interests, we look to the child's long-range as well as immediate interests. This requires considering what the future holds for the child if returned to the parents. When making this decision, we look to the parents' past performance because it may indicate the quality of care the parent is capable of providing in the future.

*In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006) (quoting *In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997)).

There is no evidence in the record that supports the conclusion that deferring the termination decision is in J.F.'s best interest.  Raelyn has had the opportunity to avail herself of numerous services to assist her in reuniting with J.F.  She failed to take advantage of those opportunities.  She failed to independently address any of the mental health concerns, substance abuse concerns, and other concerns leading to J.F.'s removal.  At this tender age, it is in J.F.'s best interest that Raelyn's rights be terminated so that the child can attain stability.  *See In re. A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) ("It is simply not in the best interests of the children to continue to keep them in temporary foster homes while the natural parents get their lives together."); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) ("We do not gamble with the children's future by asking them to continuously wait for a stable biological parent, particularly at such tender ages."); *In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990) ("Children simply cannot wait for responsible parenting.  Parenting . . . must be constant, responsible, and reliable.").

## C.

Raelyn does not contend that any statutory grounds set forth in section 232.116(3) serve to preclude the termination of parental rights.

## III.

For the foregoing reasons, the order of the juvenile court is affirmed.

**AFFIRMED.**