(18 App. Div. 169.)

### CHITTENDEN v. GATES et al.

(Supreme Court, Appellate Division, Second Department. June 8, 1897.)

1. TENANCY IN COMMON—WHAT CONSTITUTES.

Land sold under execution was bid in by a third person in his own name, for the judgment creditors, each taking a share proportionate to his judgment, and by their direction was conveyed to another person, "to hold the same and any fruits or proceeds thereof" for their account. One of the judgment creditors afterwards made an assignment for the benefit of creditors. *Held*, that the assignee and the other judgment creditor were tenants in common; Laws 1896, c. 547, § 72, providing that "every person who, by virtue of any grant, assignment, or devise, is entitled to both the actual possession of real property and to the receipts of the rents and profits thereof, in law or equity, shall be deemed to have a legal estate therein."

2. ACTUAL PARTITION—WHEN PROPER.

Actual partition may be made without great prejudice to the owners (Code Civ. Proc. § 1546), where the property consists of a strip of land about 4 miles long, and 2,000 to 4,000 feet wide, lying between the ocean and a bay.

Appeal from special term, Queens county.

Action by Horace H. Chittenden, as assignee of the real and personal estate of Alfrederick S. Hatch and Frederick H. Hatch, against Isaac E. Gates and Ellen H. Gates, his wife, and Collis P. Huntington and Arabella D. Huntington, his wife. From an interlocutory judgment appointing commissioners to partition certain real property situated at Rockaway Beach, Long Island, plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

George C. Lay, for appellant.
Maxwell Evarts, for respondents.

GOODRICH, P. J. On December 21, 1885, Harvey Fiske and Alfrederick S. Hatch recovered a judgment against Henry Y. Attrill and William K. Soutter for $163,695.31. The plaintiff became assignee of the firm and its successor for the benefit of creditors. On June 15, 1886, the defendant Collis P. Huntington recovered a judgment against the same parties for $100,240.03. On June 24, 1886, Hatch and Huntington entered into a written agreement, which, after reciting the recovery of the judgments, provides that each party should pursue the common judgment debtor, and that any and all amounts which should be derived from the said actions or any proceedings thereon should be divided between the said parties pro rata, in the following proportions, viz.: To Hatch $^{163}/_{263}$, and to Huntington $^{100}/_{263}$. On April 25, 1890, the land in question, which stood in the name of Attrill, was sold at auction by the sheriff of Queens county, under an execution upon the Hatch judgment, and bought in by William Parkin in the interest of the two parties, for $208,000. This bid was paid by a credit on the Hatch judgment to the amount thereof, and the remainder of the price was paid in cash by Huntington. Parkin wrote a letter to Chittenden and Huntington, as follows:

"In case I purchase the property advertised for sale under execution issued on the judgment in the suit of Hatch vs. Attrill, it is understood that I am to hold the property and any fruits or proceeds thereof for your account under the agreement between A. S. Hatch and C. P. Huntington, a copy of which is hereto attached."

Thereafter the sheriff executed a deed to Parkin. In December, 1891, the parties requested Parkin to convey the property to the defendant Isaac E. Gates, and this was done, Gates writing a letter to Hatch and Huntington, as follows:

"Referring to property at Rockaway Beach this day conveyed to me by Mr. William Parkin, I have to say that it is understood that I am to hold the same and any fruits or proceeds thereof for your account, under the agreement between A. S. Hatch and C. P. Huntington, a copy of which is hereto attached."

There was a mortgage upon the land, amounting, with interest, to over $250,000, which is under foreclosure in two actions, one commenced in 1886, and the other in 1894. These actions have been consolidated, and a defense has been interposed by both Chittenden and Huntington, on the ground that the mortgage is fraudulent. The defendant Huntington, since the sheriff's sale to Parkin, has paid a large amount of taxes on the property, and claims to have exercised a general care over it. Since the execution of the agreement of June 24th, Huntington has collected on his judgment a considerable sum of money, which he claims to offset upon a claim against A. S. Hatch individually, and an action for an accounting is now pending in respect thereto.

Such being the situation, this action was commenced on June 12, 1896, and judgment was demanded—First, adjudging that the plaintiff was the sole owner in fee simple of the premises, and directing Gates to convey the property to him; second, that, if it should be determined that the plaintiff and Huntington were owners in the proportion aforesaid, Gates and wife should execute a deed to them.

45 N.Y.S.—49

as tenants in common; third, that, if the last-named decision should
be made by the court, the partition of the premises should be made
between Huntington and Chittenden in accordance with their re-
spective rights and interests, and that, if the partition could. not
be made, the premises should be sold, and an accounting had be-
tween the parties. Upon the trial of the action, the claim was
made by plaintiff's counsel that the agreement of June 24, 1886,
operated as an equitable conversion, and that no action of partition
could be maintained. This claim would seem to have been aban-
doned on the argument of the appeal, but, whether it was or not,
we are of opinion that the facts created no equitable conversion, and
that the only question is whether there was error in the interlocutory
judgment directing actual partition of the premises, and appointing
commissioners of the partition.

The plaintiff's counsel contends that the parties do not own the
land as tenants in common, and, therefore, that no action of par-
tition can be had. Passing over the question that there seems to
have been a change of mind since the preparation of the complaint
which prayed for such a judgment as one of three alternative meth-
ods of relief, we think the facts clearly establish a tenancy in com-
mon. Such a tenancy exists where two persons hold possession of
lands by several and distinct titles, although their estate may be dif-
ferent, or their shares unequal, and the only unity between them is
that of possession. 1 Washb. Real Prop. (5th Ed.) p. 685. And
this possession needs only to be constructive. Wainman v. Hamp-
ton, 110 N. Y. 429, 18 N. E. 234.

The "Real Property Law" (Laws 1896, c. 547, § 72) provides:

"Every person, who, by virtue of any grant, assignment or devise, is enti-
tled both to the actual possession of real property, and to the receipt of the
rents and profits thereof, in law or equity, shall be deemed to have a legal
estate therein, of the same quality and duration, and subject to the same con-
ditions, as his beneficial interest. * * *"

The property was bought at the sheriff's sale, and bid in, in the
name of Parkin, for the joint benefit of Hatch and Huntington; and
the subsequent conveyance of the title to Gates was made at the
request of the parties, and under a written declaration of trust. It
will also be observed that by the letter of June 24, 1886, Parkin
was to hold the property itself, as well as any fruits and proceeds
thereof, for the account of Hatch and Huntington. The same lan-
guage was repeated in the letter of Gates. These transactions and
declarations, taken in connection with the statute last cited, created
a tenancy in common between the parties of the premises in question,
such as may be partitioned under section 1532 of the Code of Civil
Procedure, and this is one of the alternative judgments demanded in
the complaint.

We are thus called to investigate the question whether the judg-
ment which directed actual partition was correct. Section 1546 of
the Code provides that, where it appears to the court that the prop-
erty is so circumstanced that a partition thereof cannot be made with-
out great prejudice to the owners, the interlocutory judgment must
direct a sale at public auction; otherwise, the judgment must direct

that partition be made between the parties, according to their respective rights. The property consists of a long, narrow beach or tongue of sand, lying between the ocean and Jamaica Bay, about four miles in length, and from two to four thousand feet in width, without improvements of any kind upon it, and containing about one thousand acres. It is difficult to see how property of any description could be more susceptible of division into two equal portions, whether by cutting it into two parts, running from the ocean to the bay, and assigning one to each party, or into a greater number of parts, and assigning them to the parties in alternate sections, so that any possible difference in value of the lots arising from their proximity to the extreme point or peninsula and the part adjacent to the main land could be adjusted. But, if there should be any injustice likely to arise from inequality of values in actual partition, Code, § 1587, provides that the court may, on the coming in of the report of the commissioners, and in the final judgment, award compensation to be made by one party to the other for equality of partition. Looking at the land, however, and comparing it, acre by acre, there would seem to be no great difficulty in saying that one acre fronting the Atlantic shore was in no wise different from the adjoining acre, or that one acre with a frontage on Jamaica Bay was not seriously different from the one lying next to it, or that one interior acre was not of greater value than another interior acre. Indeed, an argument ab inconvenienti might reduce the question to absurdity by urging that, if an actual partition were made, the parties would have difficulty in keeping up the distinctive boundary between their respective lots, because it would be hard to maintain permanent "posts, stones, or other monuments" (Code, § 1554) upon a line of coast beach which is notorious for its shifting character, quality, and location.

Much more serious is the case of a division of farm land, where it consists of woodland, meadow, and pasture, and yet, in Clason v. Clason, 6 Paige, 546, Chancellor Walworth said:

"A farm containing 370 acres of land must be very peculiarly situated to render it impracticable to divide it into three parts without great prejudice to the owners; especially where the court may decree a pecuniary compensation to be made by one party to the others for owelty of partition."

A suitor who should urge such an objection to actual partition of farm lands would be almost unheard to speak.

We do not regard the evidence offered by the plaintiff to show different values of different parts of the strip as sufficient to justify a sale of the premises, instead of a partition; and this was the view taken by the learned court below, to which it did not appear that the property was "so circumstanced that a partition thereof cannot be made without great prejudice to the owners." Code, § 1546. Indeed, we fully agree with the propriety of the judgment directing an actual partition. In view of the foreclosure action, and the defense interposed thereto, and the long drawn out contest of that action, it may be very doubtful whether the premises in bulk could be advantageously sold so as to realize anything above the mortgage, as few purchasers can be found who desire to indulge in the lottery of a lawsuit involving large amounts of money. The partition will

enable the defendants to take their respective allotments of the property, and await the decision of the foreclosure suit which both of them are defending. If the plaintiff had offered to name a price above the amount of the mortgage, interest, and costs whica he would bid for the premises if put up at auction, a case might arise for the equitable interposition of the court; but, being the assignee for the benefit of creditors, he is not called upon to make such an offer at his personal risk, and he is not authorized to make it in behalf of his estate.

The plaintiff contends that the existence of the large mortgage upon the premises renders an actual partition inequitable, as the result of the decree would be to compel the assignee to take a proportionate part of the property subject to the lien of the mortgage, unapportioned; and that, if such separation of interests were made by a compulsory partition, Huntington would be enabled to "cut loose from Chittenden, and take his share of the property, make any arrangement or deal with the mortgagee, and thus cast the burden of the defense of the mortgage upon the assignee." It is somewhat difficult for us to see why Chittenden's share of the dead burden of the mortgage obligation should be fastened to Huntington's neck, there to hang till Chittenden consents to its removal. If the parties were the original bondsmen, and jointly and severally liable for any deficiency judgment, there might be force in this suggestion. To our mind, however, it would seem to be an argument in favor of making partition, so that either might effect a compromise, or otherwise adjust their difference with the mortgagee.

Under these circumstances, we are clearly of the opinion that the judgment should be affirmed. All concur.