OPINION OF THE COURT
Kaye, J.
The single question before us is whether the general partner in a limited partnership can be found guilty of larceny for misappropriating partnership funds. As a matter of statutory interpretation, we answer that question in the negative, leaving the subject of partnership defalcations to be addressed by any other penal provisions that may be applicable, or by civil litigation, or (if deemed appropriate) by legislative reform.
Defendant, an investment adviser for small pension and profit-sharing funds, was the sole general partner in Stonehenge Investment Notes 1, Ltd., a limited partnership; defendant himself was a significant investor in the firm. In January 1987, after the limited partners and their insurers exhausted their efforts to recoup the funds defendant had allegedly embezzled, defendant was indicted for two counts of grand larceny in the second degree. Specifically, the indictment accused defendant of stealing $1,050,000 from the partnership *10 by writing two checks on its money market account — one for $250,000 in April 1984, the other for $800,000 three months later. Defendant, who had authority under the partnership agreement to borrow firm funds, claimed that these were partnership investments.
At trial, upon the close of the People’s case, defendant moved to dismiss the indictment on the ground that, as a general partner, he was a "joint or common” owner of the partnership’s property and, thus, under the Penal Law could not be prosecuted for larceny even if he had misappropriated partnership property. The court reserved decision and submitted the case to the jury, which convicted defendant of both counts of the indictment. After the verdict, Supreme Court denied defendant’s motion to dismiss, and the Appellate Division affirmed the conviction, concluding that the general partner in a limited partnership could be prosecuted for larceny for stealing partnership property. We now reverse.
Larceny is committed when one wrongfully takes, obtains or withholds "property from an owner thereof’ with intent to deprive the owner of it, or appropriate it to oneself or another (Penal Law § 155.05 [1]). "Owner” is defined in Penal Law § 155.00 (5) as one "who has a right to possession [of the property taken] superior to that of the taker, obtainer or withholder.” This broad definition is immediately qualified by the declaration that "[a] joint or common owner of property shall not be deemed to have a right of possession thereto superior to that of any other joint or common owner thereof.” (Penal Law § 155.00 [5].)
In that partners under the Partnership Law are "co-owners” of firm property (see, Partnership Law §§ 10, 51 [1]), defendant contends that he cannot be charged with having committed larceny as against his limited partners, because all of the partners have an equal right of ownership. The People respond that, under Partnership Law § 51 (2) (a), partners lose their status as joint owners when they divert firm property to their own purposes. Alternatively, the People contend that defendant’s conviction should be sustained because his position as a general partner in a limited partnership is more akin to that of corporate officers and directors, who do commit larceny when they embezzle firm assets, than it is to general partners in other partnerships.
A useful backdrop against which to consider this issue is the historical evolution of the common-law concept of "owner” *11 into its modern statutory form. As with other aspects of larceny, "a proper interpretation of the past can assist us in understanding the technical rules of the crime.” (Fletcher, The Metamorphosis of Larceny, 89 Harv L Rev 469, 474 [1976]; People v Olivo, 52 NY2d 309, 315.)
At common law, no less than today, the requirement that the victim of a theft be an "owner” of the stolen property was an indispensable element of the crime of larceny. The idea behind this requirement was that the property alleged to be stolen had to "belong” to a party other than the accused (see, 2 LaFave & Scott, Substantive Criminal Law § 8.4 [c], at 355 [1986]; cf, Ward v People, 6 Hill 144 [1843] [thief in possession of property that he stole deemed to be its owner where same property was stolen from him]). If the defendant was the owner of the property and entitled to possession at the time of the taking, there could be no larceny. From this principle emerged the rule that if property was owned by two or more persons, none of the owners could commit larceny from the others. In the words of Lord Hale: "Regularly a man cannot commit felony of the goods, wherein he hath a property.” (Hale, History of Pleas of the Crown, at 513 [1683].)
Consistent with this principle was the common-law view that a partner could not be convicted of larceny for the misappropriation of partnership assets; because each partner held title to an undivided interest in the partnership, the theory was that partners could not misappropriate what was already theirs. This view has been widely recognized throughout the common-law world.* Even as States began codifying larceny, the common-law. rule continued to flourish. In the absence of a legislative expression to the contrary, courts have ordinarily held that a partner cannot be guilty of larceny for misappropriating firm property, with any such defalcations left for resolution in the civil arena (see, Annotation, Embezzlement, Larceny, False Pretenses, or Allied Criminal Fraud by a Partner, 82 ALR3d 822 [collecting cases]).
Such has been the history of the law in this State: it is surely no accident that the People cite no reported New York case where a partner has been convicted of larceny for taking partnership property. Since 1881, larceny has been defined by *12 statute in terms of a wrongful taking or withholding from the possession of the "owner” or "true owner” (compare, Penal Code § 528 [1] [1881], with former Penal Law § 1290 [1942]; and present Penal Law § 155.00 [5]; § 155.05 [1]). For more than 80 years the Legislature made no effort to define these terms. As in other States, the courts of this State consistently regarded the common-law definition of owner as controlling, concluding that partners could not be prosecuted for stealing firm property (e.g., Holmes v Gilman, 138 NY 369, 377 [1893]; People v Hart, 114 App Div 9, 13; People v Dudley, 97 NYS2d 358, 359-360; People v Dye, 134 Misc 689, 692; see also, People ex rel. Murphy v Crane, 80 App Div 202, 205; People v Herbert, 162 Misc 817, 818-819).
In 1965, the Legislature put to rest all possible doubt on this score. The Model Penal Code, completed in 1962, had rejected the common-law view by defining larceny as stealing "property of another,” which was in turn defined as property "in which any person other than the actor has an interest * * * regardless of the fact that the actor also has an interest in the property.” (Model Penal Code § 223.0 [7].) The purpose of this provision was to permit "a person ordinarily considered the owner of property * * * [to] be convicted of theft * * * Thus, a partner may be convicted of theft of partnership property.” (Model Penal Code § 223.2, revised comment, at 169 [1980].) In enacting the present Penal Law in 1965, however, the New York Legislature chose to reject the Model Penal Code approach and instead codified its own existing rule. This choice was made clear when the Legislature set forth the common-law rule, in so many words, in Penal Law § 155.00 (5): "[a] joint or common owner of property shall not be deemed to have a right of possession thereto superior to that of any other joint or common owner thereof.”
As noted in the contemporary Practice Commentary by Judges Denzer and McQuillan — members of the Commission that drafted article 155 — the purpose of this provision was to continue in force what "has long been the law of New York” that "a partner who appropriates partnership property is not guilty of larceny from his co-partners.” (Denzer & McQuillan, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 155.00, at 410 [1967].) This court has previously relied upon these very Commentaries as a reliable source for ascertaining the legislative intent underlying Penal Law article 155 (see, e.g., People v Alamo, 34 NY2d 453, 459; People v Eboli, 34 NY2d 281, 285-286), and their conclusion as to the *13 meaning of “owner” is consistent with all other available legislative history (see generally, Staff Notes of Temporary State Commission on Revision of Penal Law and Criminal Code, Proposed New York Penal Law, McKinney’s Spec Pamph, at 351 [1964] [Penal Law § 155.00 generally designed to clarify definition of larceny; no indication intent was to expand or limit then-existing definition of “owner”]; Fourth Interim Report, Temporary State Commission on Revision of the Penal Law and Criminal Code, 1965 NY Legis Doc No. 25, at 38 [Feb. 1, 1965] ["nothing * * * new (in) broad definition of larceny” contained in Penal Law § 155.05 (1)]).
A decision not to extend the larceny statute to partnership disputes — commonly litigated in civil courts — is, moreover, consistent with the Legislature’s reluctance to elevate civil wrongs to the level of criminal larceny (see, Third Interim Report, Temporary State Commission on Revision of the Penal Law and Criminal Code, 1964 Legis Doc No. 14, at 25 [Feb. 1, 1964]). In particular, the Legislature was concerned both about the effects of criminalizing conduct arising out of legitimate business activities — where there can often be close questions as to intent — and the effects of offering defeated litigants in civil suits the opportunity to seek retaliation by criminal actions (People v Foster, 73 NY2d 596, 603-604). Allowing larceny prosecutions against partners is, of course, contrary to those legislative concerns.
Thus, it is clear that, in New York, partners cannot be charged with larceny for misappropriating firm assets. Indeed, while not alone in this view, New York is widely recognized as a prime example of a State that has enacted in statutory form the common-law rule that a partner “could not steal partnership property.” (Model Penal Code § 223.2, revised comment, at 169, n 15; LaFave & Scott, op. cit, § 8.4 [c], at 355, n 38.) Since 1965, "[s]everal states have followed the lead of New York on this point in recent enactments and proposals” (Model Penal Code § 223.2, revised comment, at 170, n 15 [citing statutes of Ariz, Conn, Ore, Tex, 111]), and many other State courts have continued to follow or have recently adopted the New York rule (see, e.g, People v Clayton, 728 P2d 723 [Colo]; Burroughs v State, 406 So 2d 814 [Miss]; Patterson v Bogan, 261 SC 87, 198 SE2d 586; State v Brown, 81 NC App 281, 343 SE2d 553; State v Birch, 36 Wash App 405, 675 P2d 246; Hudson v State, 408 So 2d 224 [Fla App]).
Against this backdrop, the People’s arguments for criminal liability must fail. -
*14 The gist of the People’s first contention is that, under Partnership Law § 51 (2) (a), partners who divert firm property lose their right to possess that property and thus may no longer be deemed "owners” for purposes of the larceny statute (see also, Partnership Law § 98 [1] [d]). This argument, however, is laid to rest by the words and history of Penal Law § 155.00 (5). The qualifying language of Penal Law § 155.00 (5) —enacted long after Partnership Law § 51 (2) (a) — directly contradicts the People’s position. The argument is even flawed as a matter of partnership law. While a partner has no right to possess or use partnership property except for partnership purposes, it does not follow that partners who misappropriate the firm assets cease to be "owners” of that property. Despite a wrongful taking, a dishonest partner may still retain an ownership interest as a "tenant in partnership,” until the partnership winds up (see, Kraus v Kraus, 250 NY 63, 67 [Cardozo, Ch. J.]; see generally, Report of ABA Uniform Partnership Revision Subcommittee, Should the Uniform Partnership Act Be Revised, 43 Bus Law 121, 154 [1987] [recommending that Uniform Partnership Act "be revised to the extent necessary to make it clear that a partner who misappropriates partnership property is guilty of embezzlement”]).
Nor are we persuaded by the People’s second argument— that the well-entrenched rule applying generally to partnerships should be disregarded for general partners of limited partnerships because their position is analogous to that of corporate managers. To be sure, analogies can be drawn between a general partner in a limited partnership and a corporate officer or director. Both, for example, stand in a fiduciary relation to limited partners or shareholders, who do not manage and control the business, and consequently they may have heightened civil responsibilities (see, Birnbaum v Birnbaum, 73 NY2d 461, 465; Lichtyger v Franchard Corp., 18 NY2d 528, 536-537). But for present purposes the essential differences between a general partner in a limited partnership and a corporate manager are far more compelling than any similarities.
Most significantly, limited partnerships and corporations are distinctly different organizational forms in the law of New York. Limited partnerships are governed by the Partnership Law — as they have been since the inception of the Partnership Law — and corporations are governed by the Business Corporation Law, a fact that has pervasive legal and financial *15 significance. Apart from the inclusion of limited partnerships within the Partnership Law, the statute itself at several points specifically fortifies the blood relationship between the two types of partnership. For example, section 10 (2) states that the Partnership Law "shall apply to limited partnerships except in so far as the statutes relating to such partnerships are inconsistent herewith”; section 98 (1) provides that a "general partner shall have all the rights and powers and be subject to all the restrictions and liabilities of a partner in partnership without limited partners,” with enumerated exceptions (see, Reuschlein & Gregory, Agency and Partnership § 264, at 436-437 [1979]). In short, under the law, "limited and general partnerships are identical forms of doing business.” (Executive House Realty v Hagen, 108 Misc 2d 986, 991.)
Many additional distinctions can be drawn between corporations and limited partnerships: unlike corporations, limited partnerships (like all partnerships) have informal agreements among the partners as their basic documents of governance; and the general partner in even a limited partnership, unlike a corporate manager, risks unlimited personal liability in the conduct of firm business (Partnership Law §§26, 98 [1]). However, it is unimportant for the resolution of this appeal to define further distinctions, or indeed to establish any substantive law about corporations or partnerships. The important point is that limited partnerships are partnerships in the eyes of the law of this State, and as such they come within the rule that partners cannot be guilty of larceny when they steal from them.
We therefore disagree with the People that either Partnership Law § 51 (2) (a) or the limited partnership form are cause for departing from our longstanding rule. While the People urge that, for deterrence purposes, the rule should be otherwise — especially for limited partnerships — that is a matter of legislative policy, not a matter for the courts, who are bound not to extend criminal responsibility beyond the fair reach of the statutes.
Accordingly, the order of the Appellate Division should be reversed and the indictment dismissed.
Chief Judge Wachtler and Judges Simons, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
Order reversed, etc.

 See, e.g., Bromberg & Ribstein, Partnership § 3.05 (b), at 50-51 (1988); 2 LaFave & Scott, Substantive Criminal Law § 8.4 (c), at 355 (1986); 3 Wharton’s Criminal Law § 393, at 392 (Torcía 14th ed 1980); Lindley, Partnership, at 548 (10th ed 1935) (English common law).