OPINION OF THE COURT
Jill Konviser, J.
The defendants and complainants own the real property located at 1458 51st Street in Kings County (a four-floor residen *254 tial home). The defendants own a two-thirds share of the property and the complainants own a one-third share. The separate deeds that conveyed the property do not specify ownership in any particular portion of the house, rather the deeds refer only to the percentage share each owns in the entirety of the property.
In December 2006, the defendants were charged with grand larceny in the second degree for allegedly stealing the complainants’ one-third share of the property by forging a deed resulting in the improper transfer of the complainants’ interest in the property to the defendants. The issue presented to this court is whether the defendants may be lawfully charged with grand larceny. For the reasons that follow this court finds that they may not and the indictment must be dismissed — the law is well settled that a joint or common owner of property cannot steal from another joint or common owner of that property as the victim of the “theft” does not have a superior right of possession, a required element of larceny. (See Penal Law § 155.00 [5].)
A. Background
On April 6, 1981, Blima Homes, Inc. deeded the title to the property located at 1458 51st Street in Kings County to the defendants, as husband and wife, and to Sandor and Anna Berger, as husband and wife.[1] The deed allocated a two-thirds share of the property to the defendants and a one-third share to the Bergers:
“THIS INDENTURE, made the 6th day of April, nineteen hundred and eighty-one, BETWEEN BLIMA HOMES, INC., a domestic corporation, having offices at 1627 50th Street, Brooklyn, New York, party of the first part, and MENDEL ROSENFELD AND CHAYA ROSENFELD, his wife, residing at 1138 46th Street, Brooklyn, New York, and SAN-DOR BERGER AND ANNA BERGER, his wife, residing at 1401 58th Street, Brooklyn, New York. The Rosenfeld interest shall be to the extent of two thirds (2/3) and the interest of the Bergers to the extent of one third (1/3).”
On March 25, 1987, Sandor and Anna Berger sold their “one-third undivided interest” in the property located at 1458 51st *255 Street to the complainants, Harry and Hanna Langer, as husband and wife.[2] The deed provides in pertinent part:
“THIS INDENTURE, made the 25th day of March, nineteen hundred and 87 between Sandor Berger and Anna Berger, his wife, both residing at 1458 51st [Street], Brooklyn, New York party of the first part, and Harry Langer and Hanna Langer, his wife, both residing at 15-05 50th Street, Brooklyn, New York party of the second part, WITNESSETH, that the party of the first part, in consideration of ten dollars and other valuable consideration paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever, their one third undivided interest in [the property located at 1458 51st Street, Brooklyn New York].”
On July 8, 1987, the defendants (the Rosenfelds) and complainants (the Langers) entered into a written agreement with respect to “their respective rights and obligations regarding maintenance and use” of the property located at 1458 51st Street. (Agreement at 1 [hereinafter referred to as the 1987 agreement].)[3] The 1987 agreement sets forth the ownership interests of the complainants and defendants as follows:
“WHEREAS the parties hereto are the owners of the real property known and designated as 1458 51st Street, Brooklyn, New York as follows:
“ROSENFELDS, as Tenants-by-the-Entireties, have a two-thirds interest in said property.
“LANGERS, as Tenants-by-the-Entireties, have a one-third interest in said property . . . and
“WHEREAS, the Rosenfelds and Langers as owners of the property wish to set forth their respective rights and obligation^] regarding maintenance and use of the property.”
The 1987 agreement sets forth the rights and obligations of the defendants and complainants with respect to the subject property as follows: (1) the defendants and the complainants will each occupy one floor of the property and will each make specified rental payments in connection with the occupation of *256 their respective floors; (2) the two remaining floors are to be rented at specified rates “which are subject to change” at the defendants’ “fiduciary discretion”; (3) “the rental income from the property shall be paid to” the defendants “as fiduciary”; (4) “the income derived from the rent paid by the tenants” is to be used to “pay the monthly mortgage payment,” the electricity and heat for the basement of the apartment and “property expenses common to the entire property (i.e.) insurance, maintenance, taxes, etc[.]”; (5) “any excess income” derived from the rent is to be divided biannually with two thirds going to the defendants and one third to the complainants; (6) the defendants “manage the property” in their “fiduciary discretion”; (7) in the event that either owner wishes to sell their interest in the property they have to offer a right of first refusal to the nonselling owner; and (8) “[ejither party or his/their heirs or assigns shall not be responsible for any and all expenses attributable to more than his/their ownership interest share in the property.” The last clause of the agreement provides that “[t]his Agreement constitutes the complete and exclusive statement of the Agreement between the Venturers and replaces and supercedes all prior agreements.”[4]
In 1992, the complainants alleged that the defendants breached the 1987 agreement. The details of the alleged breach are set forth in a March 24, 1992 letter prepared by an attorney retained by complainant Harry Langer, Arnold Gulkowitz, Esq.[5] The March 24, 1992 letter prepared by Gulkowitz is captioned “Partnership Agreement dated July 8, 1987” and in several instances referred to the 1987 agreement as a “partnership agreement” and referred to the defendants as “managing partner[s].” The letter claimed in sum and substance that the defendants were in breach of the accounting provisions set forth in the 1987 agreement and rider and vowed to “suspend all future *257 rental payments” until the defendants complied with their accounting obligations. The People do not dispute the defendants’ claim that since 1992 the complainants have not “paid any rent or contributed in any way to the maintenance of the property.” (See defendants’ motion at 3.) The defendants and complainants continue to live together on the subject property and have done so since 1987.®
The People represent that on or about June 2006, complainant Harry Langer, upon consulting with an attorney regarding estate planning, learned for the first time that on May 12, 1999, the one-third interest that he and his wife had in the real property located at 1458 51st Street had been transferred, without their consent or knowledge, to the defendants.
The evidence before the grand jury shows that a deed transferring title to the complainants’ one-third interest in the property was purportedly signed by the complainants on May 12, 1999, and that such deed was later filed with the New York City Department of Finance. The result of which gave the defendants a 100% interest in the subject property.[6]
[7]
[8]The grand jury evidence further shows that at no time did the complainants sell or transfer to the defendants their one-third interest in the subject property.
An indictment jointly charging the defendants with a single count of grand larceny in the second degree was filed on December 19, 2006.®
*258 B. The Motion before the Court
The defendants claim that the indictment must be dismissed as they are joint or common owners of the property that was allegedly stolen and, therefore, cannot be charged with grand larceny. (See Penal Law § 155.00 [5].)
Penal Law § 155.05 (1) provides that “[a] person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof.” “ ‘Owner’ is defined in Penal Law § 155.00 (5) as one ‘who has a right to possession [of the property taken] superior to that of the taker, obtainer or with-holder.’ ” (People v Zinke, 76 NY2d 8, 10 [1990], quoting Penal Law § 155.00 [5].) The statute, however, places a significant limitation on this definition by providing that a “joint or common owner of property shall not be deemed to have a right of possession thereto superior to that of any other joint or common owner thereof.” (See Penal Law § 155.00 [5].) Thus, a joint or common owner of property may not be charged with larceny for stealing from another joint or common owner as the victim of the theft is “deemed” to have an equal and not a superior right of possession. (People v Zinke, 76 NY2d at 11,12; see People v Brown, 185 Misc 2d 326, 330 [Crim Ct, Bronx County 2000] [“(A) joint or common owner of property cannot be guilty of larceny for taking commonly held property. He may be liable for civil damages for conversion of the like, but he is not criminally liable”]; People v Kheyfets, 174 Misc 2d 516, 519 [Sup Ct, Kings County 1997] [“(I)f property owned by two or more people is taken by one owner, he or she cannot be convicted of larceny. The principle behind this rule is that if one is an owner of property and entitled to possession at the time of the taking, there can be no larceny”]; see also People v Green, 5 NY3d 538, 542 [2005] [the larceny statute “cannot properly be read to require merely the intent to take property, rather than the intent to take property from a person with a superior right to possession”].)
*259 Indeed, as the Court of Appeals explained in People v Zinke (76 NY2d at 11), the notion that joint or common owners of property cannot be charged with larceny is firmly rooted in common law.
At common law, no less than today, the requirement that the victim of a theft be an “owner” of the stolen property was an indispensable element of the crime of larceny. The idea behind this requirement was that the property alleged to be stolen had to “belong” to a party other than the accused (see, 2 LaFave and Scott, Substantive Criminal Law § 8.4 [c], at 355 [1986]; cf, Ward v People, 6 Hill 144 [1843] [thief in possession of property that he stole deemed to be its owner where same property was stolen from him]). If the defendant was the owner of the property and entitled to possession at the time of the taking, there could be no larceny. From this principle emerged the rule that if property was owned by two or more persons, none of the owners could commit larceny from the others. In the words of Lord Hale: “Regularly a man cannot commit felony of the goods, wherein he hath a property.” (Hale, History of Pleas of the Crown, at 513 [1683].)
Significantly, the Court of Appeals also noted in Zinke that when the present Penal Law was enacted in 1965, the Legislature had the option of rejecting the common-law view of larceny with respect to ownership by adopting the Model Penal Code’s approach that permitted a larceny prosecution to lie even if the alleged thief had an ownership interest in the stolen property. (People v Zinke, 76 NY2d at 12.) According to Zinke, the Model Penal Code defined larceny as:
“stealing ‘property of another,’ which was in turn defined as property ‘in which any person other than the actor has an interest . . . regardless of the fact that the actor also has an interest in the property.’ (Model Penal Code § 223.0 [7].) The purpose of this provision was to permit ‘a person ordinarily considered the owner of property . . . [to] be convicted of theft.’ ” (Id.)
The Legislature, however, in enacting the current larceny statute, “reject[ed] the Model Penal Code approach and instead codified its own existing rule” by drafting Penal Law § 155.00 (5) to provide that “ ‘[a] joint or common owner of property shall not be deemed to have a right of possession thereto *260 superior to that of any other joint or common owner thereof.’ ” (Zinke at 12.)[9]
Further, according to the Practice Commentary to Penal Law article 155 prepared by Judges Denzer and McQuillan at the time the statute was drafted, which was referred to by the Court of Appeals in People v Zinke (76 NY2d at 12) “as a reliable source for ascertaining the legislative intent underlying Penal Law article 155[,]” “[s]ince one who holds a joint or common interest in property does not have an interest therein superior to that of another joint or common owner, it has long been the law of New York that one cannot legally ‘steal’ from the other even if the latter has lawful possession at the time of the taking.” (Denzer and McQuillan, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 155.00, at 410 [1967].)
Accordingly, the law is well settled that a joint or common owner of property cannot be prosecuted for larceny for stealing property from another joint or common owner. (See People v Norman, 5 Misc 3d 1016[A], 2004 NY Slip Op 51392[U], *5 [Sup Ct, Kings County 2004, Marcus, J.].) The ramifications of adopting this common-law view of larceny is obvious — in certain cases, thieves will be insulated from larceny prosecutions. (See People v Zinke, 76 NY2d at 13 [a partner may not be charged with larceny for stealing partnership property]; People v Dudley, 97 NYS2d 358, 359 [Steuben County Ct 1950] [“joint owners and tenants in common cannot steal from each other”]; People v O’Brien, 102 Misc 2d 246 [Nassau Dist Ct 1979] [a joint owner of a bank account may not be charged with larceny for stealing funds from the jointly owned account]; People v *261 Person, 239 AD2d 612 [2d Dept 1997], lv denied 91 NY2d 878 [1997] [one spouse may not be charged with larceny for stealing property from his or her spouse in which he or she held an equitable interest]; see also 3 LaFave, Substantive Criminal Law § 19.4 [c] [2d ed 2003] [“The common law view of larceny is that one co-owner (e.g. a partner, tenant in common, joint tenant) cannot steal from the other co-owner”]; 3 Wharton’s Criminal Law § 381, at 457-458 [Torcía 15th ed] [“When, under principles of property law, property is owned by cotentants so that each one is entitled to the possession of the property jointly or in common with the others, one tenant cannot be guilty of larceny when he takes possession of the property, even though he does so with the intent to exclude the others from its use and enjoyment”]; Commonwealth v Silko, 6 Pa D & C 2d 542, 545 n 4 [Ct Quarter Sess 1955], quoting 32 Am Jur 954 [“ ‘Property of which the taker is a part owner is not ordinarily regarded as property of another so as to render the taker guilty of larceny, unless the person from whom he takes it has the right to its exclusive possession at the time. Hence a partner cannot steal partnership property, joint owners and tenants in common cannot steal from each other’ ”]; Maloney v Commonwealth, 264 Ky 783, 784, 95 SW2d 578, 578-579 [1936], quoting Roberson, New Criminal Law and Procedure § 813, at 1021 [“ ‘A part owner or partner is not guilty of larceny by taking the joint or partnership property from the other; each owns an undivided interest in the property, and there is in fact no taking’ ”]; Holcombe v State, 69 Ala 218, 219 [1881] [“At common law, a joint owner, or tenant in common of personal property can not be guilty of larceny, by taking or appropriating to his own use the whole or any part of the joint property, however fraudulent or felonious in fact may be his intent”].)[10]
*262 In this case, the evidence before the grand jury shows that the defendants, by way of a forged deed, stole the complainants’ one-third interest in the subject property. As the Legislature has chosen to adopt the common-law view of larceny with respect to ownership, this court, in order to determine whether a larceny prosecution may lie, is required to analyze the relationship between the parties with respect to the subject property.
The property in question, the home located at 1458 51st Street, was originally conveyed to the defendants and the Bergers in 1981 by way of a single deed. The deed provided that the defendants held a two-thirds interest in the property and the Bergers held a one-third interest in the very same property. (See deed conveying the property to the defendants and the Bergers [“The Rosenfeld interest shall be to the extent of two thirds (2/3) and the interest of the Bergers to the extent of one third (1/3)”].) In 1987, the Bergers conveyed their one-third interest to the complainants by way of a separate deed to which the defendants were not a party. (See deed conveying the Bergers’ one-third interest in the property to the complainants [noting that the Bergers’ “one-third undivided” interest in the subject property was conveyed to the complainants].)
Further, the preamble to the 1987 agreement provides that the defendants and complainants “are the owners of the real property known and designated as 1458 51st Street, Brooklyn, New York” and that the defendants “have a two-thirds interest in said property” and the complainants “have a one-third interest in said property.” The 1987 agreement further recognizes that the complainants and the defendants are both owners of the subject property by providing that if “any of the owners” wished to sell their interest in the premises, the owner wishing to sell (understood to be either the defendants or the complainants) had to offer a right of first refusal to the nonselling party (understood to be either the defendants or the complainants) (1987 agreement at 4, 11 8). Likewise, their common ownership rights were further memorialized by paragraph 9 of the 1987 agreement which provides that the parties “shall not be responsible for any and all expenses attributable to more than his/their ownership interest share in the property i.e. the LANGERS to the extent of one-third and the ROSENFELDS to the extent of two-thirds” (1987 agreement at 5, U 9).
“A tenancy in common represents interests in property held individually by two or more persons in which no right of survivorship exists.” (3 Warren’s Weed, New York Real Prop *263 erty, Common Ownership of Property, § 27.02 [1] [5th ed].) Unlike joint tenancies and tenancies by the entirety, which require the establishment of the four unities: unity of interest; unity of title; unity of time; and unity of possession,[11] “a tenancy in common is characterized by a single essential unity, that of possession, or of the right to possession of the common property.” (24 NY Jur 2d, Cotenancy and Partition § 4, at 321; see Taylor v Millard, 118 NY 244, 249 [1890] [“A tenancy in common exists when there is merely unity of possession, either with or without a union of other interests”]; Kristel v Steinberg, 188 Misc 500, 514 [Mun Ct Manhattan 1947].)
Moreover, as the only unity required for a tenancy in common is that of unity of possession, “[t]enants in common may receive their respective interests by different instruments of conveyance, at different times, and their interests need not be equal either in size of share or in quantum of estate.” (Cribbet, Principles of the Law of Property, ch 6, at 103 [2d ed 1975]; Chittenden v Gates, 18 App Div 169 [2d Dept 1897]; see Johnson v Depew, 33 AD2d 645 [4th Dept 1969]; Perrin v Harrington, 146 App Div 292, 296 [4th Dept 1911]; 24 NY Jur 2d, Cotenancy and Partition § 4, at 321; 4 Thompson, Real Property § 32.06 [a], at 87 [2d Thomas ed 2004].)
Although the “distinguishing feature” of a tenancy in common “is the right of each cotenant to use and enjoy the entire property as would a sole owner[,]” tenants in common may agree to forgo this right by “contracting] otherwise.” (Butler v Rafferty, 100 NY2d 265, 269, 270 [2003]; see D’Addario v Cavoto, 79 Misc 2d 446, 447 [Civ Ct, Bronx County 1974] [“Despite the basic concept of unity of possession inherent in tenancies in common, tenants in common are competent to agree among themselves that one of them shall have exclusive possession of the common property,” thus, “(a) fortiori the tenants have the right to divide the possession of the freehold in any manner they desire”]; see also 2 Tiffany, Law of Real Property § 427, at 215 [3d ed 1939] [“When the owner of a tract of land conveys a part thereof, without designating or attempting to designate the part so conveyed, the grantor and grantee will become tenants in common of the whole tract, in proportion to the respective quantities of each”].)
Finally, under New York law, there is a statutory presumption that “[a] disposition of property to two or more persons creates *264 in them a tenancy in common, unless expressly declared to be a joint tenancy.” (EPTL 6-2.2 [a]; see Cribbet, Principles of the Law of Property, ch 6, at 103 [2d ed 1975] [a tenancy in common is “the most common of all concurrent estates and is favored by a statutory presumption which must be rebutted by the expressed intent of the parties”].)
In this case the defendants, as a married couple, hold their two-thirds interest in the property with respect to one another as tenants by the entirety.[12] Likewise, the complainants, who are also a married couple, hold their one-third interest in the property as tenants by the entirety with respect to one another. (See EPTL 6-2.2 [b]; 3 Warren’s Weed, New York Real Property, Common Ownership of Property, § 27.04 [5th ed].)
The relationship between the defendants and complainants with respect to their two-third/one-third interest in the property is as tenants in common in that the parties are each vested with the right to possess the property but do so without the right to survivorship. (Taylor v Millard, 118 NY at 249; 3 Warren’s Weed, New York Real Property, Common Ownership of Property, § 27.02 [5th ed].)[13] Indeed, the conveyance documents place no limitation on the rights of the defendants and the complainants to each occupy the entirety of the property and the fact that the parties agreed to forgo their respective “rights to use and enjoy the entire property” by contracting in the 1987 agreement to occupy only certain floors of the subject premises did not negate the existence of a tenancy in common.[14] (Butler v Rafferty, 100 NY2d at 270; D'Addario v Cavoto, 79 Misc 2d at 447.) Nor was the existence of the tenancy in common compromised by the fact that the parties held unequal shares in the *265 property and received their “respective] interests by different instruments of conveyance at different times.” (Cribbet, Principles of the Law of Property, ch 6, at 193 [2d ed 1975]; see Chittenden v Gates, 45 NYS at 770; 24 NY Jur 2d, Cotenancy and Partition § 4, at 321.)
Moreover, as the interest that the parties share in the subject property cannot be characterized as either a joint tenancy, tenancy by the entirety or severalty,[15] New York law deems the relationship to be a tenancy in common. (See EPTL 6-2.2 [a] [“(a) disposition of property to two or more persons creates in them a tenancy in common, unless expressly declared to be a joint tenancy”].)
By the plain terms of the deeds and the parties’ understanding of those deeds as reflected by the 1987 agreement, the defendants and complainants are joint and common owners of the home located at 1458 51st Street as tenants in common. As such, neither is “deemed” by Penal Law § 155.00 (5) to have a superior interest in the subject property. (See People v Zinke, 76 NY2d at 12; People v Dudley, 97 NYS2d 358, 359-360 [Steuben County Ct 1950]; 3 LaFave, Substantive Criminal Law § 19.4 [2d ed]; see also 3 Wharton’s Criminal Law § 381, at 457 [Torcía 15th ed]; Tan, Larceny: Cotenant Taking Cotenancy Property, 17 ALR3d 1394; Levanthal, Spousal Rights or Spousal Crimes: Where and When are the Lines to be Drawn, 2006 Utah L Rev 351, 353 [2006]; Hale, History of Pleas of the Crown, at 513 [1683],)[16]
*266 The defendants and complainants hold the subject property together as tenants in common, thus immunizing the defendants from a larceny prosecution. Indeed, such result is consistent with the plain and unambiguous language of the Penal Law which provides that a larceny prosecution may not lie against a “joint or common owner of property.” (Penal Law § 155.00 [5]; see McKinney’s Cons Laws of NY, Book 1, Statutes § 94, at 190 [“The Legislature is presumed to mean what it says, and if there is no ambiguity in the act, it is generally construed according to its plain terms”]; People v Munoz, 207 AD2d 418, 419 [2d Dept 1994], lv denied 84 NY2d 938 [1994] [“It is an axiom of statutory construction that the legislative intent is to be ascertained from the language used, and that where the words of a statute are clear and unambiguous, they should be literally construed”].)
The People, nonetheless, appear to argue that even if there is technically a tenancy in common between the complainants and defendants, the rule prohibiting larceny prosecutions in this context should not apply as the complainants have a superior *267 right to possess their one-third interest in the property. While this argument is not without appeal, and has in fact been adopted in many jurisdictions,[17] it is not the law in New York, where the Legislature has chosen to codify the common-law view of larceny with respect to ownership, which dates back to Lord Hale. (See People v Zinke, 76 NY2d at 11, citing Hale, History of Pleas of the Crown, at 513 [1683].)
Although New York law requires this court to dismiss the indictment, it does so with great regret. It defies logic that the defendants, whose conduct was at best without conscience, are able to escape criminal liability based on arcane, hypertechnical principles of property law and outdated notions of criminal justice. However, “until the [L]egislature shows Lord Hale the door” one tenant in common may not steal from another tenant in common as neither party has a superior interest in the property.[18] (Penal Law § 155.00 [5].)
The defendants’ motion to dismiss the indictment is granted.

. A copy of this deed is attached to the People’s motion papers as exhibit 1.

. A copy of the deed transferring the one-third interest in the property to the Langers is attached to the People’s motion papers as exhibit 2.

. The 1987 agreement is attached to the defendants’ motion papers as exhibit 1.

. On that same date, July 8, 1987, a rider to the 1987 agreement was executed by the defendants and the complainants and is also included in the defendants’ motion papers as part of exhibit 1. The rider provides, inter alia, that: (1) the defendants and complainants agree that the minimum interest in the property that can be sold is a one-third interest “and in the event there are three parties each owning 1/3 interest, all management decisions shall be unanimous”; (2) the defendants “shall reveal all paid invoices and bank statements or copies” to the complainants quarterly; and (3) the defendants “provide a biannual accounting” to the complainants. The rider also sets forth, inter alia, various provisions addressing the rights and responsibilities of the parties in the event that a mortgage on the property was refinanced, a new mortgage was obtained or a party defaulted on a mortgage obligation.

. A copy of the letter is attached to the defendants’ motion as exhibit 2.

. The People and defense provided this information to the court during the oral argument held on June 27, 2007.

. The People represent in their motion papers that a copy of the grand jury minutes has been provided to the defendants.

. The defendants could not be charged with falsifying documents, forgery, or other related crimes as such offenses are time-barred by the applicable statute of limitations. (See CPL 30.10 [2] [b].) The grand larceny charge, however, is not time-barred as the defendants owed the complainants a fiduciary duty which served to toll the statute of limitations. (See CPL 30.10 [3] [a].) The fiduciary duty the defendants owed to the complainants arose from the specific language contained in the 1987 agreement. (See EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 19 [2005]; Northeast Gen. Corp. v Wellington Adv., 82 NY2d 158, 160 [1993]; Henneberry v Sumitomo Corp. of Am., 415 F Supp 2d 423, 459, 460 [SD NY 2006].) Moreover, the dispute that arose concerning rental payments did not abrogate the fiduciary obligations embodied in the 1987 agreement. The defendants and complainants have lived together at the subject property for almost 20 years and there is no evidence that the parties have disputed the validity of any other portion of the 1987 agreement, engaged in litigation as a result of an alleged breach of the 1987 agreement or otherwise rescinded the agreement. Thus, the parties, through their conduct, waived any *258 alleged breach when they chose to continue to treat the contract “as valid and subsisting.” (North Country Rocky Point v Lewyt-Patchogue Co., 60 AD2d 866, 866 [2d Dept 1978], lv denied 44 NY2d 643 [1978]; see Strasbourger v Leer-burger, 233 NY 55, 59 [1922] [A party to a contract may not “at the same time treat the contract as broken and as subsisting. One course of action excludes the other”]; Inter-Power of N.Y. v Niagara Mohawk Power Corp., 259 AD2d 932, 934 [3d Dept 1999], lv denied 93 NY2d 812 [1999].)

. Although the common-law view of larceny, which has been adopted in New York, is
“that one co-owner (e.g., a partner, tenant in common, joint tenant) cannot steal from the other co-owner[,] . . . [t]he modern trend is to provide by statute that it is no defense to larceny that the thief has an interest in the property taken, so long as the other has an interest therein to which the thief is not entitled.” (3 LaFave, Substantive Criminal Law § 19.4 [c] [2d ed 2003].) Indeed “most of the modern [penal] codes” have adopted the position set forth in Model Penal Code § 223.0 (7) which permits a larceny prosecution even though the thief has an interest in the property. (Id. at n 42 [noting that the Model Penal Code position has been adopted by legislative acts in Alabama, Alaska, Arkansas, Delaware, Florida, Georgia, Hawaii, Illinois, Kentucky, Maine, Maryland, Minnesota, Montana, Nebraska, New Hampshire, New Jersey, Pennsylvania, South Dakota, Texas, Utah, Washington, and Wisconsin].)

. There is no support in People v Zinke (76 NY2d at 13 [1990]) for the People’s claim that the prohibition on larceny prosecutions against joint or common owners of property is limited to property owned in the context of a partnership. Indeed, notably absent from Penal Law § 155.00 (5) is any explicit reference to partnership or a statement that the prohibition on larceny prosecutions against the joint or common owners of property is limited to partnership property. (See McKinney’s Cons Laws of NY, Book 1, Statutes § 94, at 194; see also § 240, at 411.) Further, the well-settled rule that a joint or common owner of property cannot be charged with stealing property from another joint or common owner has been applied outside of the partnership context. (See e.g. People v Person, 239 AD2d 612, 613 [2d Dept 1997], lv denied 91 NY2d 878 [1997]; People v Brown, 185 Misc 2d 326, 331 [Crim Ct, Bronx County 2000]; People v O’Brien, 102 Misc 2d 246 [Nassau Dist Ct 1979].)

. See Moore Lbr. Co., Inc. v Behrman, 144 Misc 291, 292 (Mun Ct Manhattan 1932); 24 NY Jur 2d, Cotenancy and Partition § 17, at 333.

. “A tenancy by the entirety can only be created in real property by grant to husband and wife and means that the married couple take title as one person and the right of survivorship inheres from the original grant.” (Prario v Novo, 168 Misc 2d 610, 611 [Sup Ct, Westchester County 1996]; see 3 Warren’s Weed, New York Real Property, Common Ownership of Property § 27.04 [5th ed].) Further, EPTL 6-2.2 (b) creates a presumption that “[a] disposition of real property to a husband and wife creates in them a tenancy by the entirety, unless expressly declared to be a joint tenancy or a tenancy in common.”

. See 7 Powell, Real Property § 52.02 (4) (Michael Allan Wolf ed) (“A conveyance to one married couple and . . . another married couple results in the couple holding — in tenancy by the entirety as between themselves — a fractional share as if they were one person, and which share they hold as tenant in common or joint tenant with the other grantees”).

. Thus, the People’s claim that a tenancy in common does not exist because “arguably” there is no “unity of possession” is without merit. (See People’s supp response at 3.)

. The relationship between the defendants and complainants with respect to the subject property is not as tenants by the entirety as that designation applies only to property held by a husband and wife. (See V.R.W., Inc. v Klein, 68 NY2d 560, 563 [1986].) Nor can the relationship between them be characterized as one in severalty as property is held in severalty when it is “held by a person as the sole owner thereof in his own right only, without any other person being joined or connected with him in point of interest, during his estate therein.” (1 Rasch, New York Law and Practice of Real Property § 4:6 [2d ed].) Likewise, the common interest that the defendants and the complainants share in the property is not a joint tenancy as the parties obtained their interest in the property at different times, from different deeds and in unequal shares. (See 24 NY Jur 2d, Cotenancy and Partition § 17, at 333.) Moreover, there is no evidence in the record that there was any right to survivorship between the defendants and the complainants with respect to the commonly owned property, a required element of joint tenancy. (24 NY Jur 2d, Cotenancy and Partition § 16, at 332-333.)

. There is no merit to the defendants’ alternative argument that a grand larceny charge may not lie because the 1987 agreement created a partnership between the defendants and complainants. (See People v Zinke, 76 *266 NY2d at 13.) As a threshold matter, the mere fact that the parties held the subject property as tenants in common and agreed to share rent collected from tenants in excess of their joint expenses did not create a partnership. (See Partnership Law § 11 [2] [a “tenancy in common . . . does not of itself create a partnership” regardless of whether such “co-owners do or do not share any profits made by the use of the property”].) Moreover, the intent of the parties, which is afforded great weight in determining the existence of a partnership (see 9 White, New York Business Entities 1111.01, at 2-9 [14th ed]), shows a lack of intent to create a partnership as partnership tax returns were never filed, expenses associated with a partnership were never deducted on the parties’ personal income tax returns, and a certificate of doing business as partners was never filed with the County Clerk as required by General Business Law § 130 (1) (a). (Cleland v Thirion, 268 AD2d 842, 844 [3d Dept 2000]; ACLI Govt. Sec., Inc. v Rhoades, 813 F Supp 255, 257-258 [SD NY 1993], affd without op 14 F3d 591 [1993].) Nor was the word partnership or even the name of the partnership ever specifically mentioned in the 1987 agreement, and management was vested exclusively with the defendants. (See 9 White, New York Business Entities H 11.02, at 2-11; Scharfv Crosby, 120 AD2d 971, 972 [4th Dept 1986].) Further, the 1987 agreement does not comport with the “essential purpose of a partnership” which is to “enable its members, as principals, to conduct a lawful business, trade, or profession for the pecuniary gain of the partners.” (15A NY Jur 2d, Business Relationships § 1401, at 352; see Partnership Law § 10 [1].) Finally, that the complainant’s attorney referred to the 1987 agreement as a partnership in 1992, five years after the 1987 agreement was drafted, does not prove, in and of itself, that the defendants and complainants were partners. (Brodsky v Stadlen, 138 AD2d 662, 663 [2d Dept 1988].) For similar reasons, the defendants’ argument that the 1987 agreement created a joint venture, the establishment of which is based on the same rules in which the existence of a partnership is determined (see Scholastic, Inc. v Harris, 259 F3d 73, 84 [2d Cir 2001]), is also without merit.

. See 3 LaFave, Substantive Criminal Law § 19.4 (c) n 42 (2d ed).

. See State v Durant, 122 Or App 380, 383-384, 857 P2d 891, 893 (1993) (holding under Oregon’s larceny statute, which is based on New York’s larceny statute, that a partner cannot be charged with the theft of partnership property because Oregon adheres to the common-law rule that “partners cannot steal partnership property”).