People v Miller (2018 NY Slip Op 02109)





People v Miller


2018 NY Slip Op 02109


Decided on March 23, 2018


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 23, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: PERADOTTO, J.P., CARNI, DEJOSEPH, CURRAN, AND WINSLOW, JJ.


1432 KA 16-01502

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
MELVIN H. MILLER, DEFENDANT-APPELLANT. 






MICHAEL STEINBERG, ROCHESTER, FOR DEFENDANT-APPELLANT. 
MELVIN H. MILLER, DEFENDANT-APPELLANT PRO SE.
MICHAEL J. FLAHERTY, JR., SPECIAL DISTRICT ATTORNEY, WARSAW, FOR RESPONDENT. 


 Appeal from a judgment of the Wyoming County Court (Michael M. Mohun, J.), rendered July 28, 2016. The judgment convicted defendant upon a nonjury verdict of, inter alia, burglary in the second degree, petit larceny, and criminal contempt in the first degree. 
It is hereby ORDERED that the judgment so appealed from is affirmed.
Memorandum: Defendant appeals from a judgment convicting him upon a nonjury verdict of, inter alia, burglary in the second degree (Penal Law § 140.25 [2]), petit larceny (§ 155.25), and criminal contempt in the first degree (§ 215.51 [b] [iv]). By failing to renew his motion to dismiss at the close of proof, defendant failed to preserve for our review his challenges to the legal sufficiency of the evidence (see People v Memon, 145 AD3d 1492, 1493 [4th Dept 2016]; People v Steiniger, 142 AD3d 1320, 1321 [4th Dept 2016], lv denied 28 NY3d 1189 [2017]). Nonetheless, "we necessarily review the evidence adduced as to each of the elements of the crimes in the context of our review of defendant's challenge[s] regarding the weight of the evidence" (People v Stephenson, 104 AD3d 1277, 1278 [4th Dept 2013], lv denied 21 NY3d 1020 [2013], reconsideration denied 23 NY3d 1025 [2014] [internal quotation marks omitted]).
Viewing the evidence in light of the elements of burglary in the second degree and petit larceny in this nonjury trial (see People v Danielson, 9 NY3d 342, 349 [2007]), we reject defendant's contention that the verdict is against the weight of the evidence with respect to those counts (see generally People v Bleakley, 69 NY2d 490, 495 [1987]). The evidence, including the recording of a 911 call made by the complainant, defendant's ex-girlfriend, and the arresting officer's body camera footage, establishes that defendant unlawfully entered the complainant's residence with the intent to steal her dogs. At trial, the complainant testified that defendant had moved out of the residence three months earlier and would contact her for permission to visit the dogs. Defendant called the complainant on the morning in question and asked if he could come get the dogs, but the complainant already had plans to take the dogs with her on an outing and she told defendant that he could not visit the dogs that day. Thereafter, defendant showed up at the complainant's residence, and her neighbor witnessed defendant arrive and begin to bang on the complainant's door. Defendant then opened a window on the complainant's porch and climbed through the window into the complainant's house. Upon observing defendant's actions, the neighbor retreated into her house with her young children.
Once inside the complainant's home, defendant went upstairs to the complainant's bedroom and forced his way through her locked door. The complainant told defendant to leave, and he began to take the dogs. The complainant called 911 and defendant left while the complainant was on the phone with the operator. In the 911 recording, the complainant could be heard yelling "Leave . . . Leave!" and screaming "Get out of here!" The complainant frantically reported to the 911 operator that she needed help "immediately" because defendant broke into [*2]her house through a window, "busted" through her door, and tried to steal her dogs. She told the operator that she was afraid he was going to kill her. The neighbor heard the complainant yelling and observed her pushing defendant out the door. The neighbor then observed defendant get into his truck and "barrel[ ] down" the road.
We respectfully disagree with our dissenting colleagues' view of the record that defendant simply intended to take the dogs for a walk and then return them. Defendant led the police on a high-speed vehicle chase. He was eventually apprehended after he exited his vehicle, attempted to flee on foot, and was tased by the police. Despite defendant's testimony at trial that he merely wanted to take the dogs for a walk, the arresting officer's body camera footage from the morning of the crime shows that defendant repeatedly told the police that his ex-wife stole his dogs and his money, and that he wanted "one of them." Although defendant also claimed to have paperwork proving that the dogs were licensed to him, the evidence at trial established that the dogs were licensed to the complainant. We also disagree with our colleagues' view that there is no dispute that the record establishes that defendant commonly used the window to enter the complainant's home with her consent to gain access to the dogs. When asked by defense counsel whether, to her knowledge, defendant had ever gone through that window previously, the complainant responded, "[m]aybe once." The complainant also testified that she was afraid that defendant was going to hurt her, and that she did not give him permission to enter her home through the window. We conclude that the finder of fact heard all of the testimony and was in the best position to assess the witnesses' credibility (see generally People v Lane, 7 NY3d 888, 890 [2006]).
Viewing the evidence in light of the elements of criminal contempt in the first degree in this nonjury trial, we likewise reject defendant's contention that the verdict is against the weight of the evidence with respect to that count. The evidence included the recordings of 52 telephone calls made by defendant to the complainant while he was in jail, in violation of an order of protection, and established that he possessed the requisite intent to harass, annoy, threaten or alarm the complainant (see Penal Law § 215.51 [b] [iv]).
Finally, we have reviewed the contentions raised in defendant's pro se supplemental brief and conclude that they are unpreserved for our review (see CPL 470.05 [2]), and are in any event without merit.
All concur except Carni, and Dejoseph, JJ., who dissent in part and vote to modify in accordance with the following memorandum: We respectfully dissent in part, because we conclude that the verdict is against the weight of the evidence with respect to the crimes of burglary in the second degree and petit larceny.
Pursuant to Penal Law § 140.25 (2), "[a] person is guilty of burglary in the second degree when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein, and when . . . [t]he building is a dwelling." Here, the People alleged that the crime defendant intended to commit was larceny. Thus, the People were required to prove beyond a reasonable doubt that defendant intended to steal the dogs, by permanently depriving the complainant of them (see §§ 155.00 [3]; 155.05 [1]; 155.25). Our colleagues in the majority conclude that "[t]he evidence, including the recording of a 911 call made by the complainant, defendant's ex-girlfriend, and the arresting officer's body camera footage, establishes that defendant unlawfully entered the complainant's residence with the intent to steal her dogs."
In our view, defendant had at least a good faith basis for claiming an ownership interest in the dogs despite the fact that they were licensed in the complainant's name (see Penal Law § 155.15 [1]). As stated by the Court of Appeals, "[l]arceny is committed when one wrongfully takes, obtains or withholds property from an owner thereof' with intent to deprive the owner of it, or appropriate it to oneself or another (Penal Law § 155.05 [1]). Owner' is defined in Penal Law § 155.00 (5) as one who has a right to possession [of the property taken] superior to that of the taker, obtainer or withholder.' This broad definition is immediately qualified by the declaration that [a] joint or common owner of property shall not be deemed to have a right of possession thereto superior to that of any other joint or common owner thereof' (Penal Law § 155.00 [5])" (People v Zinke, 76 NY2d 8, 10 [1990]).
Here, the complainant conceded that she was a "joint owner" of the dogs inasmuch as she [*3]testified that she considered the dogs to be owned by both her and defendant. She testified at trial that the dogs were licensed to her merely because she "was the one that took the time to go do the licensing." Notably, while defendant was incarcerated, the complainant was using defendant's debit card to contribute to veterinary care for the dogs and, while they were still living together, defendant and the complainant split the cost for Invisible Fencing. Defendant testified that he and the victim both purchased the dogs, he paid most of the cost of the dogs, and he paid for licensing every year.
Furthermore, upon our review of the record, we note that there is no dispute that defendant, with the consent of the complainant, commonly used the window to enter the house and gain access to the dogs. Indeed, it appears that, prior to his arrest, defendant simply intended to take the dogs for a walk and then return them. Viewing the evidence as a whole, we conclude that the People failed to satisfy their burden of proving beyond a reasonable doubt that defendant committed the crimes of burglary and petit larceny. We would therefore modify the judgment by reversing those parts convicting defendant of burglary in the second degree and petit larceny and dismissing those counts of the indictment.
Entered: March 23, 2018
Mark W. Bennett
Clerk of the Court